WARREN HOUGH, Adm., Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY et al., Appellants.

**APPEAL AND ERROR:** Instructions—Presumption That Jury 1· **Obeyed.** It will be assumed that the jury obeyed the instructions of the court and the cause will be considered on appeal from that standpoint.

> PRINCIPLE APPLIED: Action for personal injuries. Plaintiff assigned three grounds of negligence, to wit, (1) failure to give statutory whistle and bell signals; (2) failure to give other signals of the approach of the train and to slacken speed owing to obstructions hiding view of the train; (3) permitting weeds and brush to grow along right of way and hide approach of train. The engineer was made a defendant. The court ordered the jury to return no verdict against the engineer under any circumstances if they found that the bell and whistle signals were given as required by statute. The jury returned a verdict against the railroad company and also against the engineer. *Held,* the case would be treated on appeal from the standpoint that the verdict was based on the failure to give the statutory whistle and bell signals.

**RAILROADS:** Negligence—Statutory Signals—Failure to Give—Liability of Employees. The employees of a railway company, as well as the company itself, are liable in damages for instant death resulting in failure to blow the whistle and to ring the bell on approaching a crossing as required by Sec. 2072, Code, said section creating no new cause of action but a ''rule of evidence'' as to what acts constitute negligence *per se*.

**RAILROADS:** Negligence per se—Violation of Statutory Duty. The violation of a statute imposing a duty is negligence *per se*. Rule applied in instant case for failure to blow the whistle and ring the bell on a railway engine on approaching a crossing as required by Sec. 2072, Code.

**RAILROADS:** Negligence—Contributory—Facts Not Showing. Evidence reviewed and held not to show contributory negligence *per se*.

**DEATH:** Damages—Measure of—Present Value. ''The present value of what one might have saved'' is the measure of recovery for death. Instructions in instant case *held* correct.

**RAILROADS:** Negligence per se—Vegetation Along Right of Way. Whether permitting weeds and brush to grow along right of way so as to obstruct view of trains constitutes negligence *per se*, *query*.

**TRIAL:** Instructions—Erroneous—When Cured by Verdict. An instruction, erroneous in fact, may be cured or rendered harmless by verdict.

PRINCIPLE APPLIED: An instruction that the act of permitting weeds and brush to grow along a railway track so as to obstruct the view of approaching trains is negligence *per se*, if admitted to be erroneous, is harmless when the verdict is based only on the negligence resulting from failure to give the statutory signals.

**DAMAGES:** Death—Excessive Verdicts. A verdict for $8,000 for death, reduced by trial court to $6,000, is approved, deceased being a farmer, 26 years old, of sound body, industrious, of good habits, earning from $35 to $40 per month with board and having saved enough to buy a horse, buggy and town lot.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, DECEMBER 16, 1914.

REHEARING DENIED TUESDAY, FEBRUARY 23, 1915.

ACTION at law to recover damages for the death of Willis King, who was struck at a highway crossing on defendant's line of road by a passing train, and instantly killed. Fuhrman was the engineer on the engine drawing the train, and he was made a party defendant. Defendants filed separate answers, and on the issues joined by the pleadings the case was tried to a jury, resulting in a verdict for plaintiff in the sum of $8,170.00 against both defendants, which the trial court reduced to the sum of $6,170.00, and for the latter amount rendered judgment. Defendants appeal.—*Affirmed.*

*Tinley, Mitchell & Pryor, Helsell & Helsell, Blewett Lee* and *W. S. Horton,* for appellants.

*John P. Organ,* for appellee.

DEEMER, J.—Plaintiff's intestate, Willis King, was killed at a railway crossing of the Illinois Central Railroad, at a point between the towns of Clara and Ascott, in Pottawattamie County, Iowa, about five o'clock in the afternoon or evening of December 23, 1913. He was traveling in a top buggy drawn by a single horse, and with him was a young lady something over fifteen years of age. Deceased had started about seven o'clock in the morning of the day he was killed from the town of Blencoe, something like fifty-five miles from the place of the accident, to go to the town of Crescent to spend the holidays with his mother and a little son, who lived near the latter town. They arrived at the town of California Junction about noon, and were proceeding leisurely on their way and, generally speaking, in a southerly direction, until they got into Pottawattamie County where they were compelled to take a highway running a little north of east, which crossed defendant's right of way at approximately right angles.

This crossing was from one-half to three-quarters of a

mile from where the highway turned east from its generally north and south course, and as the railroad track was upon a grade or slight embankment it was visible for half a mile as one drove east upon the road.  There was a little snow upon the ground, and there was a mild wind from the north, but it was not unusually cold for that time of year.  The side curtains of the single-seated buggy were on, and they were buttoned down, but the front was entirely open.  There were several robes in the buggy, and each of the occupants had wrapped himself with the robes and in addition each had on winter wraps, but neither had his or her ears covered, although deceased had on a cap provided with fur ear tips, which were not down.

The horse had been walking slowly as they approached the crossing and did not increase his gait until just before a passenger train on defendant's road struck the vehicle near the front end thereof, and apparently between the horse and the vehicle, knocking both from the track, the horse to one side of the track and the vehicle and its occupants to the other.  The train which did the damage was a passenger train coming from the south, and it was running at the rate of approximately fifty miles an hour when the fireman discovered the horse and gave the engineer the alarm. The train which caused the accident ran some distance beyond the crossing before it was stopped, the witnesses differing widely in their testimony as to the distance; and when King was picked up after the collision it was found that he was dead.  Defendant Fuhrman was the engineer in charge of the train.

The allegations of negligence upon which the case was submitted to the jury were in substance: (1) Failure of the defendant company and its engineer to give the usual, customary and statutory crossing signals; (2) failure to give other signals and warnings of the approach of the train or to slacken the speed of the train for the crossing, by reason of the dangerous character thereof, due to the growth of weeds

1. APPEAL AND ERROR: instructions: presumption that jury obeyed.

and brush upon defendant's right of way to the south and west of the crossing, in such a manner as to obstruct the view, from a traveler approaching the crossing, of a train coming from the south, and to prevent the engineer in charge of the train from seeing a traveler upon the highway approaching the crossing; (3) in permitting weeds and bushes to grow and remain upon the right of way in such a manner as to obstruct the view of a train coming from the south, and to prevent the engineer from seeing anyone approaching the crossing from the west, upon the highway in question. The defendants denied all negligence, and pleaded contributory negligence on the part of plaintiff's intestate.

The trial court submitted each of these allegations of negligence and specifically stated that:

"If it appears that said whistle was at least twice sharply sounded about thirteen hundred feet from the crossing in question, and the bell thereafter rung continuously until said crossing was passed, it would, in my judgment, be a compliance with the law as to said statutory signals, but if it appears from the evidence by the greater weight thereof that either of said statutory signals was omitted by the defendants, the failure to give such statutory signal would be negligence.

"As before stated, it is for you to say from all of the evidence bearing thereon whether said statutory crossing signals were given or not.

"If they were given, then your verdict must be in favor of the defendant, John Fuhrman, as in my judgment he is not shown by the evidence to be responsible for the other acts of negligence alleged, if such acts are shown in the evidence. If the whistle on the engine was twice sharply sounded where the defendant's whistling post is situated or about thirteen hundred feet south of the crossing in question, and the bell rung continuously thereafter until said crossing was passed, it would, in my judgment, be a sufficient compliance with the statute, and in that event, as before stated, your verdict must

be in favor of the defendant Fuhrman, but if the evidence shows, by the greater weight thereof, that said signals were not given, then both the defendant Fuhrman and the defendant railroad company would be guilty of negligence.''

The jury was then told that the other matters of negligence alleged had application only to the railway company, and that if they failed to find negligence of the defendant in either of the respects charged, their verdict should be for the defendants. In other words, the jury was instructed that its verdict might be against both defendants in the event the statutory signals were not given, but that no verdict could be returned against the engineer even though it found the defendant railroad company negligent, unless that negligence was the omission to give the statutory signals. The verdict, as we have seen, was against both defendants. We must assume that the jury followed the instructions and should consider the case from that standpoint. This eliminates one or more doubtful propositions in the case and confines our inquiries to rather narrow fields.

Passing for the moment some rulings on testimony, we go directly to one fundamental proposition argued for the appellant Fuhrman to the effect that the case should not have been submitted and no verdict rendered against him for the reason that no cause of action is stated, and no action will lie against him individually for an instant death caused by his failure to give the statutory signals. As we understand counsel, the proposition here is that the statute creates the liability; that this is of the railroad company, and not of its employee, and that as at common law no recovery would lie for a wrong causing instant death, there can be no recovery here; and certainly no joint recovery for violation of a statutory duty, which statute fixes the liability simply upon the railway company. The statute with reference to the giving of signals reads as follows:

2. RAILROADS: negligence: statutory signals: failure to give: liability of employees.

"A bell and a steam whistle shall be placed on each loco-
motive engine operated on any railway, which whistle shall
be twice sharply sounded at least sixty rods before a road
crossing is reached, and after the sounding of the whistle the
bell shall be rung continuously until the crossing is passed;
but at street crossings within the limits of cities or towns the
sounding of the whistle may be omitted, unless required by
ordinance or resolution of the council thereof; and the com-
pany shall be liable for all damages which shall be sustained
by any person by reason of such neglect. Any officer or em-
ployee of any railway company violating any of the provisions
of this section shall be punished by fine not exceeding one
hundred dollars for each offense." Code Sec. 2072.

It will be noticed that this section requires the giving of
the signals and provides for both civil and criminal liability.
The rule which generally obtains in this state is that the vio-
lation of a statute is in itself negligence, and that one injured
in consequence thereof is entitled to recover, provided he
himself is free from contributory negligence. As a rule it
is no defense for one to show that his act or omission was
while acting as agent or servant for another. As we view it
the question here is not one of survival of actions or of pro-
viding a remedy for instant death, but rather whether the
statute creates any civil liability on the part of the servant
or employee guilty of the act or omission, and if not, whether
any such liability would have existed at common law. Under
our statutes all causes of action survive, and may be brought
notwithstanding the death of the person entitled to the same;
and the right of civil remedy is not merged in a public offense.
Code Secs. 3443 and 3444.

Code Sec. 3445 also provides: "Any action contemplated
in the two preceding sections may be brought, or the court,
on motion, may allow the action to be continued, by or against
the legal representatives or successors in interest of the de-
ceased. Such action shall be deemed a continuing one, and to

have accrued to such representative or successor at the time it would have accrued to the deceased if he had survived. . . ."

Under these sections it has many times been held that, although the death be instant, nevertheless there is a right of action for the death which may be enforced by the representative of the deceased. *Conners v. R. R.,* 71 Iowa 490; *Worden v. H. & S. R. R.,* 72 Iowa 201; *Donaldson v. R. R.,* 18 Iowa 280; *Flynn v. R. R.,* 159 Iowa 571.

So that the fact that King died instantly has no bearing upon the ultimate liability of the engineer. No question is made regarding misjoinder of parties, and as we understand defendant's contention here, it is that under the statute the engineer, although he violated the statute in question, cannot be held liable for the resulting damages, notwithstanding an express requirement that he give the signals.

As already suggested, it is the general rule that everyone who commits an unlawful act, injurious to another, is civilly liable therefor and cannot escape because he was an agent or servant of another. Mechem on Agency, Sec. 571; *Blue v. Briggs,* 39 N. E. 885.

The question of the joint and several liability of a railway company and its engineer, in running a train over a crossing without giving the usual and customary signals, is considered in many recent cases of the Supreme Court of the United States, and it is uniformly held that where the railway company is held liable because of the failure of its servant to perform a duty, whether that duty be imposed by the common law or in virtue of a statute enacted for the safety of travelers upon a highway, who are subject to the dangers from a railway crossing, both the company and the employee are liable, and may be joined as parties defendant. *Alabama Ry. Co. v. Thompson,* 200 U. S. 206, 26 Sup. Ct. 161; *Chesapeake Co. v. Dixon,* 179 U. S. 131, 21 Sup. Ct. 67; *C. N. O. & T. P. R. R. v. Bohon,* 26 Sup. Ct. Rep. 166.

See also: *Mayberry v. N. P. R. R.*, 110 N. W. (Minn.) 356; *I. C. R. R. v. Coley*, 89 S. W. 234; *S. R. R. v. Grizzle*, 53 S. E. 244.

The statute in question does not create a new cause of action; for the defendant company and its servants and employees in charge of a dangerous machine, even without the statute, were required to exercise reasonable care on the approach of a train to a highway crossing; and the statute simply provides a rule of evidence regarding what shall be considered negligence as a matter of law. In other words, some signal was or might be required without the statute, and the statute merely provides what the nature of the signal shall be. This statute was obligatory upon the defendant's servants, and if they failed to observe it they, as well as the company itself, were liable for any damages resulting therefrom; provided the injured party was free from fault.

3. RAILROADS: negligence *per se:* violation of statutory duty.

The liability for failure to exercise care so as to avoid injury was not created by statute; that existed at common law, but the nature of the care required and the signals to be given are defined by statute. The liability grows out of the fault of the agent, and he is responsible therefor without any statute expressly so declaring, unless it appears that the legislature expressly exempted him from liability, and such exemption should not arise from mere inference. As already suggested, we do not appreciate the force of the argument that, as there was no liability at common law for the tortious act of a servant causing instant death, there can be none under a statute creating a liability for the wrong unless the statute defining the wrong so declares. The statutes creating liability for death are broad and comprehensive, and relate not only to injuries in which the party survives for an appreciable length of time, but also to those resulting in instant death; and, as suggested in the *Donaldson* case, *supra*, a statute imposing liability upon a corporation either civilly or criminally

does not exempt the immediate agent in doing the wrong from original or concurrent liability.

The fact that the statute imposes a criminal liability upon the servant for failure to give the signals is no reason for absolving him from civil liability; for under our holdings the violation of such a statute is in itself negligence.

II. It is argued somewhat strenuously that there is no testimony to support the allegations of negligence due to defendant's failure to give the statutory signals; that such as there is in the record is merely negative in character, which is more than met by positive testimony that these signals were given. The difficulty here lies in the premise that the plaintiff's testimony was negative in character. There is affirmative testimony that such signals were not given, and the ultimate question was one of fact for a jury upon contradictory testimony. *Hoffard v. R. R.,* 138 Iowa 543, and cases cited.

III. Counsel confidently argue that under the record, deceased should be held guilty of contributory negligence as a matter of law. The difficulty with this contention is that the argument ignores certain facts shown by the testimony to the effect that both deceased and his companion looked and listened for approaching trains at a point where ordinary care dictated that they should have looked, and that by reason of the nature of the crossing, the growth of weeds and brush obstructing the view of a train approaching from the south, it was practically impossible to see a train more than 200 feet away, except when a horse driven to a vehicle would practically be upon the west rail of the track; that no signals were given of the approach of the train; that the horse was traveling at a slow walk, and the buggy was making no noise; that the train was running at a high rate of speed and gave no signals whatever of its approach, and no warning until there was no opportunity for plaintiff to escape; that the train was not seen by either of the occupants of the buggy until the engine was nearly upon them; that the nature of the crossing

4. RAILROADS: negligence: contributory: facts not showing.

was such as to mislead one approaching it into the belief that he could see a train approaching from either direction, whereas by reason of the weeds and brush growing upon the right of way he could not see it at all at any reasonable distance from the tracks; these and other facts made the question of contributory negligence one of fact for the jury, and its finding must be accepted as correct for the purposes of this appeal. *Artz v. R. R.,* 34 Iowa 153; *Case v. R. R.,* 147 Iowa 747; *Willfong v. R. R.,* 116 Iowa 548; *Hartman v. R. R.,* 132 Iowa 582; *Gray v. R. R.,* 143 Iowa 268; *Guggenheim v. R. R.,* 33 N. W. (Mich.) 161.

IV. The following instruction is complained of: "If the plaintiff is entitled to recover, the measure of his recovery for the death of Willis King is such sum as will fully compensate the estate of Willis King for the pecuniary loss to said estate caused by his death. There is no exact rule of law by which such damage can be precisely measured. It must be left largely to your good judgment and common sense.

5. DEATH: damages: measure of: present value.

"In measuring the damages for the death of Willis King, if any are awarded by you, you should take into consideration so far as shown by the evidence his age at the time of his death, his health and strength, the probable length of life that was before him, the business he was engaged in, his habits as to sobriety and industry, and, so far as can be gathered from the evidence his earning capacity at the time of his death, and fix such fair sum as being now paid in a lump, and being freed from all of the contingencies and uncertainties that inhere in human life, will fairly compensate the estate of Willis King for what the estate has been deprived of in the way of accumulations *that the deceased might have made had he lived.*

"That is, it would be such a sum as being paid now, would be the fair present worth of what Willis King, had he lived, would probably have saved from his earnings, to his estate during his life, so far as said matter can be gathered from the evidence."

This is said to be erroneous because of the underscored words, and *Ford v. Des Moines,* 106 Iowa 94; *Williams v. Clarke Co.,* 143 Iowa 329; *Escher v. Carroll Co.,* 159 Iowa 627, are relied upon. These cases are not in point as an examination will show. The case is ruled by *Hammer v. Janowitz,* 131 Iowa 20, wherein it is held that the instruction is not subject to the objections made. What one whose life has been prematurely taken might have saved, had he lived, is the test given by all the books and means no less than what he would probably have saved. It has reference primarily to ability or power, and not to amount. The amount was to be found by the jury from the circumstances recited in the instruction, and the burden was properly placed upon the plaintiff of showing the amount.

V. Certain rulings on testimony are complained of. We do not set them out, for nothing would be gained from a discussion thereof. Suffice it to say, we see no error.

VI. The trial court instructed that if the jury found the defendant allowed weeds and brush to grow upon its right of way, as claimed by plaintiff, so as to obstruct the view of an approaching train, this would consti-

6. RAILROADS : negligence *per se:* vegetation along right of way.

tute negligence *per se;* and if this was the proximate cause of the injury, and deceased did not contribute thereto by any negligence on his part, the defendant railway company and the defendant company alone would be liable. This instruction is vigorously assailed. The proposition presented in argument is by no means free from doubt, and the authorities are conflicting. See Thompson on Negligence, Vol. 2, 2d Ed., Secs. 1506, 1507 and 1508; *Indianapolis Ry. v. Smith,* 78 Ill. 112; *C. R. I. & P. R. Co. v. Williams,* 43 Pac. 246; *Moberly v. R. R.,* 17 Mo. App. 518; *Nashville R. R. v. Witherspoon,* 78 S. W. 1052; *Cowles v. R. R.,* 66 Atl. 1020; *Richardson v. R. R.,* 45 N. Y. 846; *Beigsiegel v. R. R.,* 40 N. Y. 9, 12; *Mackay v. R. R.,* 35 N. Y. 75.

We do not find it necessary to review these cases, or to

make any intimation as to what the rule should be in this jurisdiction. The verdict was based upon the defendant's failure to give the statutory signals, and no matter if the instruction complained of was erroneous, the error was without prejudice; for liability was predicated upon the other ground, and defendant is not entitled to a reversal for any error not inhering in that finding. Other questions are moot ones, and it will be time enough to decide them when the necessity arises.

7. TRIAL: instructions: erroneous: when cured by verdict.

VII. Lastly, it is insisted that the judgment as rendered was excessive. The trial court reduced the verdict from $8,170.00 to $6,170.00, the one hundred and seventy in each case being for the loss of the horse and the destruction of the buggy and harness. As so reduced, we do not think we are justified in ordering a further reduction. The deceased was a farmer, twenty-six years of age, sound of mind and body, industrious and of good habits, and getting the ordinary farm wages of $35.00 to $40.00 a month with board. He had saved enough to buy the horse and buggy and harness, and a town lot. What he might have earned and saved had he lived his full expectancy was, of course, somewhat problematical; but we do not think the judgment as finally rendered should be further reduced.

8. DAMAGES: death: excessive verdicts.

Finding no prejudicial error, the judgment must be, and it is—*Affirmed.*

LADD, C. J., GAYNOR and WITHROW, JJ., concur.