HAROLD HOLLINGSWORTH, Appellant, v. M. C. HALL et al., Appellees.

No. 41170.

April 5, 1932.

Max Kinney and F. S. Finley, for appellant.

McAdam & Nelson and McCoid, McCoid & McCoid, for appellees.

Grimm, J.—Briefly stated, it appears that this accident occurred during the late afternoon of November 21, 1929, in the city of Mount Pleasant, Iowa, at the intersection of Main Street and Saunders Street in said city. Main Street runs north and south; Saunders Street runs east and west. Main Street is paved with brick; Saunders Street is paved with bitulithic. Main Street is approximately 34½ feet wide from curb to curb; Saunders Street is approximately 25 feet wide from curb to curb.

Late in the said afternoon of November 21, 1929, the defendant Marguerite Hall Weir, daughter of the defendant M. C. Hall, was driving a Buick sedan owned by the defendant M. C. Hall, south on Main Street. The plaintiff was driving a Model T Ford Sedan west on Saunders Street. The cars collided in the intersection and the plaintiff was injured.

At the close of all of the evidence, the court directed a verdict for the defendants.

I. Certain motions to strike and to dismiss the appeal have been filed in this court by the appellee. They have been carefully considered and are overruled, except in so far as the same pertain to the fourteenth error relied upon for reversal, which, by an amendment, was filed too late.

II. In the separate answer of the defendants, it is alleged, in substance, that on or about May 18, 1927, there was duly passed by the city council of Mount Pleasant an ordinance known as "Ordinance No. 59—Boulevards." The ordinance provided, in substance, that certain streets in the city should there-

after be designated as boulevards, and included therein was that portion of Main Street at which the accident happened. The ordinance also provided that it shall be the duty of the mayor to place a "stop sign" at each point where a street intersects any one of such designated boulevards and also provides that "all vehicles entering such boulevard street from intersecting streets shall come to a full stop before such entrance." It also provides that any violation of its provisions shall, upon conviction, subject the violator to imprisonment not exceeding thirty days, or to a fine not exceeding one hundred dollars.

It is the contention of the appellant that this ordinance is not properly before the court and that the trial court erroneously admitted it in evidence.

There was presented at the trial and identified as Exhibit 16, a book of ordinances of the city of Mount Pleasant. The certificate thereto attached was introduced as a separate exhibit and reads as follows:

"I hereby certify that this book of ordinances was published at twelve o'clock noon, on the 25th day of July, 1927, City of Mount Pleasant, Iowa. John P. Budde, Clerk of Mount Pleasant, Iowa."

To this the plaintiff objected as "incompetent, irrelevant and immaterial, in no way authenticated or proper showing of publication, as required by law."

There was also introduced as a separate exhibit Ordinance No. 59, which appears on pages 173 and 174 of said Exhibit 16, being the book of revised ordinances of Mount Pleasant, Iowa, 1927. Objection was made to this exhibit on the ground that it was "incompetent, irrelevant, immaterial, no showing of any proper publication or identification of that ordinance as required by statute."

Section 5721 of the Code provides:

"Book form. When any city or town shall cause or has heretofore caused its ordinances to be published in book or pamphlet form, such book or pamphlet shall be received as evidence of the passage and legal publication of such ordinances, as of the dates mentioned or provided for therein, in all courts and places, without further proof. When the ordinances are so published,

it shall not be necessary to publish them in the manner provided for in the preceding section.''

In Barrett v. C. M. & St. P. Ry. Co., 190 Iowa 509, l. c. 516, where a similar question was before this court, after quoting said section 5721, it was said:

''The dates appearing, the ordinances are presumed to have been properly adopted and published, as exacted in the section preceding that quoted. Their inclusion in such a book is sufficient authentication, and therefrom it is to be presumed that they had been legally adopted. Incorporated Town of Hancock v. McCarthy, 145 Iowa 51. The statute quoted does not contemplate the re-enactment or the republication of the ordinances, but merely their compilation, for convenient use and to simplify the method of their proof. Gallaher v. City of Jefferson, 125 Iowa 324, 328; Rocho v. Boone Electric Co., 160 Iowa 94.''

The record as made presented prima-facie proof of the ordinance. No proof to the contrary was introduced. The ordinance is properly in the case.

■■■ III. Included in the numerous grounds urged in a motion for a directed verdict made at the close of all the evidence, is the one that plaintiff was guilty of contributory negligence and therefore cannot recover.

Main Street, at the point under consideration, clearly appears to be not only in name but in fact one of the principal thoroughfares and traveled streets in the city of Mount Pleasant. It appears to lie immediately east of the city square. A portion of Main Street, in addition to being on the public square, has been for many years a principal artery of traffic to many of the important institutions in the city. North of the intersection in question is the Iowa Wesleyan College, with its various buildings, including gymnasium, chapel and conservatory of music. On the west side of this street is what is known as the P. E. O. Memorial Library. A fuel company is located on the other side. The Mount Pleasant Free Public Library is on this street approximately two blocks south of the intersection of Main and Saunders Streets. The Phi Delta Theta Fraternity House is on the east side of Main Street about a block south of the intersection in question. The main line double track of the Burlington

road is about 500 feet north of the intersection. North of this main line is a railroad switch. These and other facts clearly show that Main Street was a busy thoroughfare. Saunders Street is described as about three blocks north of the city square and is narrower than Main Street. At the intersection in question, the curb line on the north side of Saunders Street on the west side of Main Street is six feet farther south than the north curb line of Saunders Street on the east side of Main Street. Saunders Street is not only narrower, but in much less use than Main Street.

The plaintiff had lived in Mount Pleasant for a period of about three years. He was thoroughly familiar with this intersection, having crossed it frequently, and likewise familiar with the general conditions, as to traffic and otherwise, which surrounded the intersection in question.

About five o'clock in the afternoon of the day in question, the plaintiff was driving west on Saunders Street. He had left his place of employment in his own Model T Ford Sedan and was in a hurry, as he was preparing to attend a banquet. According to his own evidence, he drove into this intersection without stopping before entering it. He saw a car coming from the north, which he says was then ''back quite a little ways.'' It appears he intended to turn south on Main Street. He then testified:

''Q. Did you proceed then toward the intersection? A. Well, I just drove up to the square there and I seen this big car coming and it was coming awful rapidly, and I thought I wouldn't have time to turn around, I just stopped.''

It is conceded by everyone that he stopped in the intersection. As is customary under such circumstances, there is some disagreement between some of the witnesses as to just where his car stood in the intersection at the time of the collision.

The defendant Mrs. Weir, a married woman with three children, when the five o'clock whistle blew, left her husband's office and drove to Main Street, thence south across the switch track and then the main tracks of the Burlington road. It is claimed that these crossings were ''bumpy'' and necessitated slowing the speed of the automobile. Her sister lived the fourth house south of the railroad track. She drove slowly to that place

with the intention of stopping, when she found it unnecessary to do so. As she drove south on the west side of Main Street, she saw the plaintiff's car driving west at what she estimates to have been about an equal distance with her from the intersection. She claims both cars were going at about the same rate of speed. As Mrs. Weir approached Saunders Street, she looked to her right to ascertain if any vehicle approached going east on Saunders Street, and then glancing to the left, she comprehended the possibility of a collision, and before the collision applied her brakes. It is her claim that when the crash came, her foot was jarred from the brakes onto the accelerator, which caused her car to lunge forward to the point where it finally stopped, near the southwest corner of the intersection in question. The plaintiff's car finally came to rest against the curb on the east side of Main Street, slightly south of the southeast corner of the intersection, and the car was headed in a southeasterly direction. It appears from experiments made that the visibility of the plaintiff north on Main Street was as follows:

When the plaintiff was 70 feet east on Saunders Street, he could see 500 feet north on Main Street. When 80 feet, he could see 250 feet; when 87 feet, he could see 225 feet; when 90 feet he could see 200 feet; when 95 feet, he could see 175 feet; when 103 feet, he could see 150 feet; when 117 feet, he could see 125 feet; when 143 feet, he could see 100 feet north; when 250 feet east on Saunders, he could see 75 feet north on Main Street.

The plaintiff concedes he saw Mrs. Weir's car coming south on Main Street. He testified that when he was 50 feet from Main Street, he could see a block north on Main Street. He concedes that when he stopped, immediately prior to the collision, he was in the intersection, and as previously noted, he stopped because, as he says, "I thought I didn't have time to turn around. I just stopped,"—which, interpreted in light of the uncontradicted evidence in the case, meant he thought he didn't have time to turn south into Main Street from his then position in the intersection and avoid a collision with Mrs. Weir's car. The plaintiff nowhere testifies in substance or effect that as he saw Mrs. Weir's car coming from the north, he assumed or thought, from the circumstances surrounding him, that he would have time to either cross the intersection or to drive into the intersection and turn south on Main Street and avoid a

collision. He makes no claims that he was misled by any fact or circumstance in the case. He does not even claim to have miscalculated or misjudged distances or speed. He merely claims that when he got into the intersection, he then concluded he didn't have time to turn around, and he just stopped. It was daylight. The lights were not burning on either car, and therefore there was no confusion by reason of lights or reflections. The plaintiff does not undertake to say where his car was relative to the intersection when he saw Mrs. Weir's car, nor does he undertake to say where her car was when he saw it. So far as this record shows, the two cars were approaching this intersection at about an equal distance from the intersection line, Mrs. Weir coming from the north and the plaintiff coming from the east.

Section 5035 of the Code, then and still in force, is as follows:

"Preference at intersecting points—alleys. Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way provided, however, that such vehicles coming from alleys and private drives, where view is obstructed, shall stop immediately before entering a public street or highway."

This section has been before this court many times.

In Masonholder v. O'Toole, 203 Iowa 884, there was a collision at an intersection of highways. It was claimed that the plaintiff was guilty of contributory negligence in three respects:

1. He failed to sound his alarm.
2. Knowing that the defendant was coming from the right, he failed to give him the right of way.
3. He failed to look to his right.

After quoting Section 5043 of the Code of 1924, pertaining to sounding a signal device at the intersection of highways, Section 5028, having reference to careful operation of a car, and Section 5035, having reference to the right of way, this court said:

"These sections of the statute were enacted for the protection of public travelers on the highway. Appellant seems not to

have observed any of the requirements therein provided. It was his statutory duty to have his car under control, and to look to his right, and to give to any car approaching him from the right the right of way; and a failure so to do on his part was negligence. One of the grounds on which the court directed a verdict in favor of defendant was that plaintiff was guilty of contributory negligence, as a matter of law. That the failure of appellant to give a warning signal as he approached this intersection was negligence, see Hough v. Illinois Cent. R. Co., 169 Iowa 224; Clark v. Weathers, 178 Iowa 97; Corning v. Maynard, 179 Iowa 1065; Girl v. United States R. Adm., 194 Iowa 1382. But that this would not be conclusive upon the question of contributory negligence, see Carlson v. Meusberger, 200 Iowa 65. That the driver of an automobile who fails to yield the right of way to another vehicle at an intersecting crossing, when he is under legal obligation to do so, is guilty of negligence, see Seager v. Foster, 185 Iowa 32.''

This court sustained a directed verdict for the defendant.

In Carlson v. Meusberger, 200 Iowa 65, this court had for consideration an intersection collision, and contributory negligence was one of the important issues in the case. In that case, the defendant and appellant was charged with having failed to allow the right of way to the plaintiff. The court said:

''But here there was at all times a duty resting on appellant to obey the statutory injunction to yield the right of way to a car approaching from the east,—a duty from which he was not relieved by failure of appellee to give a signal of his approach. The duty to give the right of way was imposed by statute, and was not at all dependent on the other's neglect or failure to exercise due care, or to observe a statute applicable to him. * * * He was under the positive duty to yield the right of way, and of necessity was required to exercise reasonable diligence to ascertain if another, with a right over the crossing superior to his was approaching.''

Manifestly, a combination of circumstances might arise under which it would not be the duty of the party approaching the boulevard to stop; as, for instance, if the vehicle with the right of way is so far away that, in view of all attending circumstances

and upon the assumption of legal and proper speed on the part of the approaching vehicle, no danger of collision reasonably appears, then the party need not stop. Wolfson v. Jewett Lumber Co., 210 Iowa 244. There is here, however, no such record. As previously noted, there is no claim on the part of the plaintiff that, having seen Mrs. Weir's car, he was deceived or misled as to any circumstances, including speed, which led him into the intersection where he interfered with Mrs. Weir's right of way, thus causing the collision.

Appellant devotes a very substantial part of his case in an effort to determine just at what point in the intersection the collision occurred. Under the record here, this is an unimportant question. According to the uncontradicted testimony, Mrs. Weir was driving south on Main Street in her proper place in the west half, though whether close to the curb or close to the center line of Main Street is not definitely shown, nor is it material. It appears that as she approached the intersection, she looked to ascertain whether a party driving east on Saunders Street approached the intersection with Main Street. Following this, she again looked to the left and found the plaintiff in the intersection. Whether he had then stopped or was still proceeding across the intersection is not shown.

Under the facts and circumstances in this case, the plaintiff was guilty of contributory negligence, and he cannot recover.— Affirmed.

WAGNER, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.