VALLIE E. BECK, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY et al., Appellees.

No. 41322.

JUNE 24, 1932.

Bernard A. Dolan and Phil F. Roan, for appellant.

H. J. Nelson and Johnson & Martin, for Chicago, B. & Q. R. Co., appellee.

E. H. Pollard, for American Insurance Co., appellee.

GRIMM, J.—On the 3d day of April, 1929, the plaintiff filed the first petition in this case, claiming approximately $2,000 as damages, based upon the alleged destruction of a warehouse by a fire emanating from one of defendant's engines. Numerous

amendments and demurrers were filed, and finally, in response to an order of the court requiring the plaintiff to condense his pleadings into one substituted petition, the plaintiff, on February 6, 1931, filed such amended and substituted petition, in three counts.

The first count is apparently based upon the theory that the property was destroyed by a fire set out by one of the defendant's trains as it passed the building in question.

The second count is based upon the theory that one of the employees of the defendant set fire to some logs on the plaintiff's premises and that the building was destroyed by reason of said fire.

The third count is apparently based upon the theory that the defendant company failed to keep its right of way clear of grass and other combustibles and that the fire referred to in Count Two spread to the building in question.

The defendant answered by way of a general denial, and by an amendment the defendant asked that the insurance company, which had settled the fire claim, be impleaded in the cause. Later, the insurance company filed its answer and cross-petition and the cause was transferred to equity.

The court found for the defendant railway company, dismissing all three counts of plaintiff's petition. The plaintiff only appeals.

I. The appellant's counsel, in his argument in reference to Counts Two and Three, says:

"These two counts * * * are not pressed or argued, although an appeal was taken therefrom, because the evidence being insufficient to hold defendant for the wrongful acts of Utley (defendant's agent who set fire to the logs)."

This eliminates from consideration the said Counts Two and Three.

II. The remaining Count One is the one in which plaintiff alleges that the defendant's passing train set fire to plaintiff's building. In the errors relied upon for reversal is found the following:

"The court in announcing his finding as to the First Count said: 'The court does not think there has been one iota of

testimony that the railroad engine started this fire.' (85, 17.) Appellant agrees with the court on this finding, because nowhere in the record does it appear that any living witness saw or attempted to explain the origin of the fire, and appellant contends that there is not one syllable of testimony by any human being that goes to establish the origin of this fire: it depends on circumstantial evidence.''

The appellant contends that the judgment should be reversed ''because the circumstantial evidence in this case is so strong and convincing that there can be only one conclusion, that is: The railway company set fire to and destroyed plaintiff's property.''

The abstract in this case is quite lengthy, but the essential facts may be briefly stated.

Beck's Station on the defendant's line of railway is what is commonly known as a flag station. There is only a platform and some sort of a shelter in place of a station house. The plaintiff's building stood on a wedge-shaped piece of ground owned by the plaintiff and located about 600 or 900 feet north of Beck's Station. The railroad track was west of the building and the right of way extended to within approximately 20 feet of the west part of the building. East of this building, a highway extended in a northerly and southerly direction. At a point between the building and Beck's Station, the highway and the railway came together, and this point where the railroad and the highway came together formed the south point of the triangle on which the building stood. The building was old and more or less dilapidated. It stood on cement pillars several inches from the ground. In places, the building was propped from the outside. It contained a mixed assortment of old farming implements, lumber, and personal property of various kinds and character. The triangular piece of ground was unfenced and uncultivated.

For convenience, we will hereinafter refer to the burned building as the ''warehouse.''

It appears that for a considerable period of time, perhaps several years, two or three small piles of logs stood on the triangular strip, some feet south of the warehouse, but entirely upon the plaintiff's property—the triangle. A day or two be-

fore the evening when the warehouse was burned, an employee of the railway company undertook to destroy these old piles of logs by setting fire to them. This act of the railway employee's in setting fire to the logs, as the record shows, was purely voluntary on the part of the employee, and was done entirely outside of his duties as an employee of the railway company. As previously shown, appellant's counsel, abandoning his argument in support of Counts Two and Three, concedes that the record is insufficient to hold the defendant for the acts of this employee Utley. Appellant's Brief and Argument contains the following in relation thereto:

"These two counts were based on Code Section 12993, that creates a liability for setting out fire and allowing it to escape between the first day of September and the first day of May following on any prairie or timber land, by reason of Utley, the section foreman, setting fire to three piles of walnut logs on the triangular piece of ground belonging to plaintiff in the southeast corner of Section Sixteen (16), which are not pressed or argued, although an appeal was taken therefrom, because the evidence being insufficient to hold defendant for the wrongful acts of Utley."

The record tends to show that the log pile closest to the warehouse was about 20 or 25 feet south thereof. There is also evidence in the record to show that this particular log pile was not burning, although the record is not very clear on that subject.

The warehouse burned shortly after 8 o'clock on Sunday evening. There is a dispute in the record as to the direction from which the wind was blowing on that occasion. It is contended by at least one witness that the wind was blowing from the southeast, while other witnesses testified that the wind was blowing a rather stiff gale from the northwest or west. Some witnesses passed the triangle very shortly before or about 8 o'clock the evening of the fire, and did not see any logs on fire. In fact, they did not see any fire about the premises. Other witnesses testified that about 6 o'clock on the evening of the fire, there was an automobile camping outfit on the triangle south of the warehouse, and they had a fire, apparently, as the witnesses stated, built for cooking purposes, about 30 feet from

the warehouse. There is also evidence tending to show that the log fires were seen smouldering as late as 5 o'clock on the evening of the fire. There is also evidence in the record that on at least one occasion, not the day of the fire, but previous thereto, a tramp was found in the warehouse with a fire in a bucket. Apparently at other times tramps were found in the building, although not on the day of the fire.

The record clearly shows that the warehouse contained a conglomerate mass of various kinds of personal property, much of it quite old.

On the evening of the fire, one of defendant's passenger trains, going south, was flagged by one of the witnesses on the trial, in order that his daughter might take the train south. The flagging signal was answered by the engineer when the engine was 500 or 600 feet north of the station, at which time the steam was shut off and the train was permitted to drift into the flag station. In other words, the uncontradicted evidence is that before the engine of the south-bound train reached the warehouse, it had ceased using steam and the train began to drift into the station.

It is conceded that the flag station called "Beck's Station" is on a level piece of track, but that beginning at a point some distance north of the station, the track slopes down, and also at a point some distance south of the station the track slopes down.

Two witnesses passed Beck's Station in an automobile about 8 o'clock of the evening of the fire, and they testified that there was no fire there. They drove north a mile to a point where they had to wait at a grade crossing to permit the south-bound train to pass. After the train passed, they drove over the track and about 40 rods to a house where they were going to visit, and as they walked into the house, they were told of the warehouse fire. No one claims to have seen the south-bound train's engine throwing out any sparks or fire of any kind. No one claims to have seen any fire communicated from the south-bound train to the warehouse or the surrounding premises. A north-bound train passed through Beck's Station at about 8:13 or 8:14 o'clock. The men on the engine saw the fire through the cracks in the building in the interior of the warehouse, before reaching Beck's Station. One of the train employees on the north-bound

train which passed Beck's Station around 8:13 o'clock on the evening of the fire, said:

"I noticed with reference to the building in question (the warehouse), as I passed Beck's Station, as we neared the building, we could see a fire inside the building through the cracks, and as we got to it, I switched over to the right side of the engine and saw the fire appeared to be in the inside in the northwest corner."

The locomotive engineer on the north-bound train testified as follows:

"As I passed Beck's Station on the day the warehouse was burned, I noticed, as we were coming from the south, about a quarter of a mile south, a reflection there through the cracks of the building, and lighted some of the building; and as we got to the building, there was a fire on the inside, with flames beginning to show from the northwest corner of the building."

On the uncontradicted record, certainly the north-bound train had no connection with the fire. As previously stated, no eyewitness saw any sparks or fire emanating from the south-bound train, and it is conceded that for some time before and after the south-bound train passed the warehouse, the engine was not working steam, but was drifting for a stop at Beck's Station.

No one saw any fire on the grass or other surroundings of the warehouse on the north or west of the building. It will be recalled that the train passed along the west side of the building. The testimony of the train crew of the north-bound train tends strongly to support the theory that the warehouse was burned from the inside, although the record does not very definitely supply any plausible reason therefor. Whether the fire originated within the building from any cause, or was communicated from the smouldering fire in the logs south of the building, or was communicated from the fire of the campers, which fire was a short distance south of the building, or from some other altogether unknown cause, is merely a matter of conjecture. The appellant concedes that "there is not one syllable of testimony by any human being that goes to establish the origin of this fire,—it depends on circumstantial evidence."

634

This court has recently dealt with this subject in Dingmon v. Chicago & Northwestern Railroad Company, 194 Iowa 721. Reading on page 725, we find:

"The burden rested upon the appellee to prove that the appellant set the fire that destroyed appellee's barn. There was no direct evidence of this, and he relies wholly upon circumstantial evidence. The appellee did not carry the burden resting upon him to establish his theory that the fire originated from the appellant's engine, under the circumstances proven, when it may fairly be said that the established circumstances are equally consistent with the theory that the fire originated from the appellee's stove. It is not enough for the appellee to produce evidence that creates a surmise or conjecture that the fire may have originated as claimed by him, while, at the same time, the proof also creates a surmise or conjecture that it may have originated in another way. Where the proof is equally balanced, or the facts are as consistent with one theory as with the other, a plaintiff has not met the burden which the law casts upon him. This is the well established rule of our previous cases; and, applying that rule to the facts of this case, it must be said that the appellee did not carry the burden of proof to sustain his claim that the fire that injured his property originated from the operation of appellant's engine."

Many of the previous cases of this court on the subject are collected and commented upon in said Dingmon case.

Passing upon this case in equity, we find that the plaintiff has failed to "carry the burden resting upon her to establish her theory that the fire originated from the appellant's engine." See also Williams v. Cohn, 201 Iowa 1121, l. c. 1129. See also Hemminger v. City of Des Moines, 199 Iowa 1302, l. c. 1307, in which this court said:

"A theory may not be said to be established by circumstantial evidence unless the facts upon which the theory is predicated are of such a nature and so related to each other that the conclusion sought to be drawn therefrom is the only conclusion that fairly and reasonably arises. 'It is not sufficient that they be consistent merely with that theory, for that may be true, and yet they may have no tendency to prove the

theory. * * * If other conclusions may reasonably be drawn as to the cause of the injury from the facts in evidence than that contended for, the evidence does not support the conclusion sought to be drawn from it.' Neal v. Chicago, R. I. & P. R. Co., 129 Iowa 5.''

The burden is on the plaintiff. The defendant carries no burden to account for the origin of the fire. Upon the whole record in this case, the fire might have originated in the building from one of several causes. It might have caught from one of the other sources on the outside.

We think the trial court correctly ruled.

III. Appellant's counsel seems to entertain the thought that whenever a fire occurs along a railroad right of way, the fire itself is prima-facie evidence of negligence on the part of the railway company. In this the appellant is in error. It is only when it is found, upon competent evidence, direct or circumstantial, that the railroad company set out the fire, that a case of prima-facie evidence of negligence has been made out. This is a well established and well understood rule and needs no citation in support of it, but see German Insurance Co. v. Chicago & N. W. R. Co., 128 Iowa 386; Stewart v. Iowa Cent. R. Co., 136 Iowa 182.

Upon the whole record, the cause must be, and is,—Affirmed.

All justices concur.