Susan Hogan, Administratrix, Appellant, v. Ray E. Nesbit, Appellee.

No. 41117.

January 17, 1933.

Rehearing Denied May 6, 1933.

McCoy & Beecher, for appellant.

Longley & Frank, for appellee.

KINDIG, C. J.—The controversy here grows out of an automobile accident which occurred at the intersection of Arterial Highway No. 20 in Black Hawk county, with the county highway therein, known as the Dewar-Gilbertville road. Generally speaking, the arterial highway extends in an easterly and westerly direction, while the Dewar-Gilbertville road runs north and south. These roads thus intersect about six miles east of Waterloo.

Arterial Highway No. 20 is paved at the place in question. This pavement is eighteen feet wide. There is gravel on the Dewar-Gilbertville road.

At about 6 o'clock in the evening of July 20, 1930, the defendant-appellee, Ray E. Nesbit, while approaching the aforesaid intersection, was driving a Jewett-Paige sedan automobile westward on Arterial Highway No. 20. Riding with the appellee in the Jewett-Paige automobile at the time were his wife and two children. As the appellee thus approached the intersection from the east over Arterial Highway No. 20, John Hogan, a farmer, 66 years of age, advanced toward it in a Model T Ford touring automobile from the north over the Dewar-Gilbertville road. When thus approaching the intersection, John Hogan was alone in the automobile driven by him. Both automobiles entered the intersection at the same time. A collision occurred and John Hogan was killed.

Thereafter Susan Hogan was appointed administratrix of the John Hogan estate. She, as such administratrix, on September 5, 1930, commenced this action in the district court to recover damages from the appellee for the alleged wrongful death of John Hogan. Susan Hogan, because the district court directed a verdict against her, as such administratrix, is the appellant on this appeal.

It is claimed by the appellant that her intestate was killed because of the appellee's negligence. Such negligence, the appellant

contends, is as follows: First, that the appellee failed to operate his automobile, when approaching the intersection, in a careful and prudent manner; second, that the appellee operated his automobile at the time and place at an excessive rate of speed; third, that the appellee on the occasion in question did not properly control his automobile; fourth, that the appellee, as he approached the intersection, did not keep a proper lookout for cars on the county highway; fifth, that the appellee wrongfully turned his car to the left-hand side of the arterial highway at the intersection; sixth, that the appellee failed to sound a horn or other signal device on his automobile when approaching the intersection; and, seventh, that the appellee failed to stop his automobile after discovering the peril of the appellant's intestate at the intersection.

By way of answer to the foregoing contentions of the appellant, the appellee claims that John Hogan himself at the time in question was guilty of negligence which contributed to his injury. This negligence, the appellee asserts, arose because John Hogan, as he approached the intersection from the north, did not stop at a stop sign placed on the north side of the east and west paved highway, nor did he stop at any place between that stop sign and the pavement on the arterial highway. Accordingly, the appellee declares the district court properly directed a verdict in his favor because of the foregoing contributory negligence of John Hogan. On the other hand, however, the appellant appeals because the district court entered judgment against her on the directed verdict aforesaid.

I. The stop sign above named was placed at the north side of the paved arterial highway by the proper state authorities as required by law. In construction, the sign complied with legal requirements. Consequently it was the duty of appellant's intestate to stop the vehicle which he was propelling before he drove across the arterial highway. Because the appellee approached the intersection at the time in question in his automobile on the arterial highway, he had the right of way over the appellant's intestate, who, on that occasion, was advancing toward the intersection on the north and south county road. Under the circumstances, then, the appellant's intestate, if he failed to stop before entering the primary highway, violated sections 5079-b1, 5079-b2, 5079-b3, and 5079-b4 of the 1927 Code, then in operation. A violation of those statutes by the appellant's intestate under the circumstances would constitute negligence. Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Albert v. Maher Bros. Transfer

Co., 215 Iowa 197, 243 N. W. 561; Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569; Waldman v. Sanders Motor Co., 214 Iowa 1139, 243 N. W. 555; Holub v. Fitzgerald 214 Iowa 857, 243 N. W. 575; Willemsen v. Reedy, 215 Iowa 193, 244 N. W. 691.

Can it be said, then, as a matter of law, that the appellant's intestate in the case at bar did not stop his automobile before crossing the arterial highway? Manifestly under the record it can be so said. None of the witnesses testifying for the appellant stated whether her intestate did or did not stop his automobile before driving across the arterial highway. Some of these witnesses saw the appellant's intestate as he approached the intersection. Those of the appellant's witnesses who did thus see her intestate approach the intersection testified that he retarded his speed to five or ten miles an hour. In no event, however, did any witness say that the appellant's intestate stopped his car before entering the intersection, as required by law.

On the other hand, F. W. Reisner, testifying for the appellee, stated that the appellant's intestate did not stop his automobile before crossing the intersection. This witness was a graduate of the East High School, of Waterloo, Iowa. He was 25 years of age and, at the time in question, operated a bus for the Illinois Central Railway Company between Waterloo and Dubuque. The bus, just before the collision, was traveling on the arterial highway eastward from Waterloo near the intersection of the highways in question. When thus traveling toward the intersection where the accident occurred, Reisner saw John Hogan's car approaching from the north and likewise saw the appellee's car advancing from the east. According to Reisner, the two cars were traveling at about the same rate of speed. Furthermore, this witness said that the appellee swerved his car to the left at the intersection in an apparent attempt to avoid hitting the car driven by the appellant's intestate. There is no contradiction of Reisner's testimony on the issue that the appellant's intestate did not stop his car before entering the intersection. It is argued by the appellant that Reisner must not have seen her intestate's car. This assertion is based upon the proposition that Reisner saw a car approaching the intersection at the rate of 25 or 30 miles an hour, rather than a car traveling at the speed of 5 or 10 miles per hour. Witnesses testifying for the appellant, as before indicated, said that her intestate approached the intersection at a speed of from 5 to 10 miles an hour. So, it is concluded by the appellant that Reisner,

who said the car that he saw was going 25 or 30 miles an hour, could not have seen John Hogan's vehicle.

Obviously there is no basis in the record for this argument. Reisner said he saw the car driven by the appellant's intestate. There is no basis in the record to deny that Reisner saw the car in which the appellant's intestate was killed. Both the appellant's witnesses and Reisner were referring to the same automobile. No other automobile was upon the north and south highway at the time. Clearly Reisner and the appellant's witnesses referred to the same vehicle, but merely disagreed concerning its speed. Consequently it is clear that the appellant's intestate at the time in question drove his automobile across the arterial highway without first stopping on the north side thereof. This failure on the part of the appellant's intestate constituted negligence. Such negligence will bar a recovery if it contributed to the accident and resulting death of the appellant's intestate.

■ II. It is argued by the appellant that her intestate's negligence, above explained, was not the proximate cause of the accident. Although her intestate may have been negligent in failing to stop, the appellant declares that such failure on his part to exercise due care will not prevent a recovery in the case at bar unless such omission was the proximate cause of the accident.

The basis for this contention is the thought that the appellee's car struck the automobile driven by the appellant's intestate at the south edge of the pavement on the arterial highway. Therefore, it is concluded by the appellant that had the appellee driven straight west on the north, or right-hand side of the pavement, he would have missed her intestate's car. See Descombaz v. Klock (S. D.) 235 N. W. 502. Evidently the cars came together at the south side of the pavement, because the appellee swerved his automobile to the south. Had he gone straight forward or turned to the right, it is probable that the cars would have collided at some other position on the pavement.

However that may be, the appellant does not advocate the correct theory of law. Contributory negligence, in order to bar a recovery by the one guilty thereof, need not be the proximate cause. Albert v. Maher Bros. Transfer Co., 215 Iowa 197, 243 N. W. 561, supra; O'Hara v. Chaplin, 211 Iowa 404, 233 N. W. 516; Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; Towberman v. Des Moines City Railway Co., 202 Iowa 1299, 211 N. W. 854. There can be no recovery in this case if the negligence of the appellant's intestate

"contributed in any way or in any degree directly" to his injury and death. A recovery may be barred although the contributing negligence was not the proximate cause of the injury. See cases above cited. If the negligence of the injured party were a contributing cause to the injury, it will defeat a recovery although it may not be the proximate cause thereof. Towberman v. Des Moines City Railway Co. (202 Iowa 1299, 211 N. W. 854), supra; O'Hara v. Chaplin (211 Iowa 404, 233 N. W. 516), supra; Stilson v. Ellis (208 Iowa 1157, 225 N. W. 346), supra.

Of course, the negligence of the injured party which will bar a recovery for the negligence of another must be a contributing cause. Such negligence of the injured party must have a causal relation to the injury before it will bar a recovery. Carlson v. Meusberger, 200 Iowa 65, 204 N. W. 432; Sexauer v. Dunlap, 207 Iowa 1018, 222 N. W. 420; Lane v. Varlamos, 213 Iowa 795, 239 N. W. 689. Consequently there is a well-defined distinction between the proximate cause of an injury and a contributing cause thereto. Perhaps, in discussing the subject, this court in some of its opinions has used the sentence "contributory negligence must be such negligence as contributes proximately to the injury" (see Reitveld v. Wabash Railroad Co., 129 Iowa 249, 105 N. W. 515, and Bird v. Hart-Parr Co., 165 Iowa 542, 146 N. W. 74); but when employing that language the writers of the opinions intended to indicate the thought expressed by the more apt and appropriate sentence "if the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery." Albert v. Maher Bros. Transfer Co., 215 Iowa 197, 243 N. W. 561, 563, supra.

With the distinction thus made between proximate cause and a contributing cause, it is now important to determine whether, in the case at bar, the negligence of the appellant's intestate in failing to stop before crossing the arterial highway was a contributing cause to his death. For the purposes of this discussion only, it is here assumed, without deciding, that the appellee was guilty of one or more of the grounds of negligence charged against him by the appellant. Having assumed that the appellee was thus guilty of negligence which caused the injury and death of the appellant's intestate, it is next essential to determine whether the appellant's intestate, by negligence, contributed to his injury and death.

Manifestly by failing to stop on the north side of the arterial highway, as required by law, the appellant's intestate was guilty of

negligence which contributed in some degree to his injury and death. This is true even though the appellee negligently drove his automobile on the wrong side of the arterial highway across the intersection. If the appellee had driven on the right, rather than on the left, side of the highway, so far as this particular charge of negligence is concerned he would not have been negligent. The very fact that the appellee, under the said assumption, negligently drove on the wrong side of the highway, furnishes the negligence to which the negligence of appellant's intestate can contribute. Carlson v. Meusberger (200 Iowa 65, 204 N. W. 432), supra; Masonholder v. O'Toole, 203 Iowa 884, 210 N. W. 778; Hollingsworth v. Hall, 214 Iowa 285, 242 N. W. 39; Willemsen v. Reedy, 215 Iowa 193, 244 N. W. 691, supra.

In view of the fact that the negligence of the appellant's intestate was a contributing cause to his injury and death, there can be no recovery of the damages sought in the case at bar unless it be under the rule known as the "last clear chance".

III. A definition of the last clear chance was given in Clemens v. Chicago, Rock Island & Pac. R. Co., 163 Iowa 499, as follows (reading on page 502, 144 N. W. 354, 355):

"The doctrine of last clear chance is predicated on the idea (which is humane, and just in its proper application), that the fact that the plaintiff has negligently placed himself in the place of peril will not defeat recovery, if the defendant discovered his negligence, in so placing himself, for such a length of time before the injury that it [the Railway Company] could have avoided injuring him by exercising reasonable care."

There are many other prerequisites necessary before the definition of the last clear chance would be complete. See Clemens v. Railway Company (163 Iowa 499, 144 N. W. 354), supra. But for the purposes of the present discussion, the foregoing excerpt from the Clemens case sets forth the essential prerequisites for the application of the last clear chance rule. It is argued by the appellant that even if her intestate were negligent in failing to stop before crossing the arterial highway, the appellee nevertheless, after seeing John Hogan's peril, could have avoided the accident by driving his automobile on the north or right-hand side of the pavement on the arterial highway. As she argued under the proposition discussed in division II, above, the appellant here asserts that because the accident occurred on the south side of the pavement on the arterial high-

way, the appellee could have avoided the accident by guiding his automobile to the north or right-hand side of the pavement. Undoubtedly the cars came together at the south side of the pavement because the appellee swerved his vehicle to the left. Had he not thus swerved his automobile to the left, the collision, as above suggested, would have undoubtedly occurred at some point on the pavement farther north.

An underlying weakness appears in the appellant's theory under the record. This weakness is that the appellee did not discover the peril of the appellant's intestate in time to avoid the accident. According to the testimony of the appellee, he was about 500 feet east of the intersection when he first saw the car of the appellant's intestate. At that time it is said by the appellee that the car driven by the appellant's intestate was 450 or .475 feet north of the intersection. The appellee further declared that he continued driving his own car westward on the north or right-hand side of the pavement on the arterial highway. When thus operating his automobile, the appellee appreciated that he was on an arterial highway, and therefore had the right of way over vehicles approaching the aforesaid intersection from the Dewar-Gilbertville road. While thus operating his automobile on the arterial highway, the appellee had a right to assume that the appellant's intestate approaching the intersection on the Dewar-Gilbertville road would observe the stop sign and make the necessary stop. Jelsma v. English, 210 Iowa 1065, 231 N. W. 304; Lein v. John Morrell & Co., 207 Iowa 1271, 224 N. W. 576; Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Wambean v. Hayes, 205 Iowa 1394, 219 N. W. 813.

In his testimony, the appellee said that he did assume that the appellant's intestate would make the stop required by statute before entering the intersection. He continued to thus assume that the appellant's intestate would obey the law and make the stop until the latter was about 7 or 8 feet north of the pavement. It is said by the appellee that when the car driven by the appellant's intestate was 7 or 8 feet north of the pavement, the appellee's automobile was about 5 feet east of a point where the center line of the arterial highway crosses, at right angles, the center line of the Dewar-Gilbertville road. As the appellee was driving in the manner and way aforesaid he first noticed, according to his testimony, that the appellant's intestate was looking westward and not observing the appellee's oncoming car. That was the first time, it is said by the appellee, that

he realized the appellant's intestate would not make the stop on the north side of the arterial highway, as required by law. So, in an attempt to avoid the collision, the appellee suddenly swerved his car from the north to the south side of the pavement, but nevertheless struck the car driven by the appellant's intestate on the south half of the pavement. According to the appellant's testimony, the right front wheel of the appellee's car struck the left front wheel of her intestate's car near the south edge of the pavement.

There is some corroboration for the appellee's contention in the testimony of his wife, that he first discovered the peril of the appellant's intestate at the time when the respective automobiles were located, with reference to the intersection, as above described. No witness for the appellant contradicts the foregoing testimony of the appellee. The burden of proof is upon the appellant to establish her right to recover under the last clear chance rule. She has failed to furnish the necessary proof. Her failure to establish a case under the last clear chance rule so far as material here arises because there is nothing in the record to indicate that the appellee after discovering the peril of John Hogan could have avoided the accident by the exercise of reasonable care. In no event can the last clear chance doctrine have application in the case at bar unless it be found that the appellee discovered the negligence of the appellant's intestate at a time when, by the exercise of reasonable care, the former might have avoided injuring the latter. Steele v. Brada, 213 Iowa 708, 239 N. W. 538, and cases therein cited.

Obviously the appellant has failed to furnish proof to show that the appellee, by the exercise of reasonable care, could have avoided injuring her intestate after discovering his perilous position at the intersection. While the appellant argues that the appellee could have avoided the injury by turning to the right rather than to the left at the time in question, yet there is no evidence to sustain that argument. It is to be remembered that under the record the appellee was five feet east of a point established by the intersection of the center lines of the two highways at a time when the appellant's intestate was seven or eight feet north of the north edge of the pavement. Under these circumstances, it appeared prudent to the appellee to turn to the south, but by so doing he did not avoid the accident. Had the appellee attempted to stop his automobile or propel it straight forward, it is apparent that it would have struck the car driven by the appellant's intestate or that vehicle would have col-

lided with appellee's automobile. At least, there is no evidence to prove that this is not true.

On the other hand, had the appellee turned to the right, because of the location of the respective cars, it is not apparent that the collision would have been averted. In fact, it is almost certain, according to the record, that had the appellee turned his car to the right when in such close proximity to the automobile driven by the appellant's intestate, there would have been a collision.

■ The theory that the collision would have occurred had the appellee turned to the right is more consistent than, or at least equally as consistent as, the appellant's contention that a collision would have been averted in that event.

"A theory may not be said to be established by circumstantial evidence unless the facts upon which the theory is predicated are of such a nature and so related to each other that the conclusion sought to be drawn therefrom is the only conclusion that fairly and reasonably arises. 'It is not sufficient that they be consistent merely with that theory, for that may be true and yet they may have no tendency to prove the theory. * * * If other conclusions may reasonably be drawn as to the cause of the injury from the facts in evidence than that contended for, the evidence does not support the conclusion sought to be drawn from it'." Beck v. Chicago, B. & Q. R. Co., 214 Iowa 628, 243 N. W. 154, 156.

To the same effect, see Nichols Roofing & Paving Co. v. City of Des Moines, 215 Iowa 894, 245 N. W. 358.

Consequently the evidence in the record is not sufficient to sustain the appellant's theory of recovery on the last clear chance doctrine. Under all the circumstances, it is apparent the district court properly directed a verdict.

Wherefore, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

All Justices concur.