WALDEMAR NAGEL, Administrator, Appellant, v. JOHN BRETTHAUER, Appellee.

No. 45638.

JUNE 17, 1941.

Prichard & Prichard and O. P. Bennett, for appellant.

Welch & Acrea, for appellee.

WENNERSTRUM, J.—Plaintiff, as administrator of the estate of Albert Otto Nagel, alleges in his petition in this cause substantially as follows:

That on November 9, 1939, at about 7:00 o'clock p. m. the decedent, Albert Otto Nagel, was on a public highway in Monona County, Iowa, the road at said place running in a north and south direction; that at the time in question the decedent was on the west side of the highway and in a place where he had a right to be; that said position on the west side of said highway was a position of apparent safety with respect to any automobile approaching said position from the south; that at or about the time in question and while the decedent was in a position of apparent safety on the highway he was struck by an automobile driven by the defendant, John Bretthauer, said automobile then being driven along the highway in a northerly direction; that Nagel died soon after he was struck as the result of injuries received by him when struck by defendant's automobile; that the injuries received by the decedent, Nagel, and which resulted in his death, were due to the negligence of the defendant in the following particulars:

1. Said defendant failed to operate his automobile in such a manner as to have the same under control.

2. The defendant failed to reduce the speed of his automobile to a reasonable and proper rate as he approached the decedent, Nagel.

3. That the defendant failed to drive his automobile upon the right-hand or east half of the traveled portion of the highway as he approached the point where he struck Nagel.

4. In striking Nagel with his automobile while the decedent was upon the west half of the traveled portion of the highway.

The plaintiff further alleged that Nagel, the decedent, kept a proper watchout and that he was free from negligence that contributed to his injuries and his death. Thereafter the plaintiff filed an amendment to his petition which in substance alleged that as the defendant, John Bretthauer, approached the place of the accident he saw the decedent walking on the west side of said highway and approaching the defendant; that as the defendant saw the decedent so approaching, the defendant had sufficient time and a fair chance to have avoided the accident by the exercise of reasonable care; that after the defendant saw the decedent upon the highway he had sufficient time and a fair chance to avoid said accident by driving his automobile to the right-hand side or the east portion of said highway.

The defendant filed an answer, which by stipulation was made applicable to the amendment to the petition, and in which answer the defendant denied "each and every allegation contained in the plaintiff's petition."

At the close of the plaintiff's testimony the defendant moved for a directed verdict on the ground that the plaintiff had failed to prove negligence on the part of the defendant; that plaintiff had failed to show freedom from contributory negligence on the part of the decedent, and that the "last clear chance" doctrine did not apply.

This original motion was overruled by the court and after the jury had been recalled for further proceedings in connection with the case, counsel for the defendant then announced that they rested their case. The defendant then, renewed his motion for a directed verdict upon the same grounds as stated and incorporated in his original motion. This last motion was sustained by the court. Thereafter the court entered a judgment upon the verdict as returned under the direction of the court, and dismissed plaintiff's action with prejudice, and at plaintiff's costs. Plaintiff has appealed from this judgment as entered by

the trial court. A brief summary of the evidence is necessary in order to set forth the record that was before the court and upon which it based its action.

The car driven by the defendant was traveling north, and was proceeding in the opposite direction to that in which the decedent, Nagel, was walking. There was testimony of two Iowa Highway Safety Patrolmen and the Sheriff of Monona County, Iowa that showed there were footprint marks visible for some distance leading up to the place of the accident. These footprints were about two feet in from the right-hand side of the road and on the west side. The roadway at the point where the decedent was struck was twenty-four feet wide. The investigation made by these peace officers was about two hours after the time of the accident and there was no comparison made as to the footprints on the ground, as above referred to, with the decedent's shoes. The only testimony that bears upon the location of the decedent is that given by one Lois Morton who testified that, at the time of the coroner's inquest, she acted as stenographer or clerk in reporting the hearing. She gave testimony from her notes of the hearing and her transcript that the defendant testified in substance as follows: That he first saw Mr. Nagel ''when he was as far from him as it is from the city hall to the Bank at Ute.'' The said Lois Morton, then testified that that distance was approximately 100 feet. There is no testimony in the record to the effect that the defendant at any time or in any hearing said he saw the decedent when he was 100 feet away. That the defendant then stated that Mr. Nagel was walking on ''the west side of the road.'' She also testified that the defendant at the coroner's inquest stated:

''I seen Albert Nagel coming down the road, and said, 'there comes Albert Nagel.' He was on the west side of the road, and when we got real close to him it seemed that he came over and ran into the car. He was not walking on the pedestrian's right of way, as he was supposed to be facing the traffic. He was going south and I was going north. When he got in the glare of the lights he held up his hand and then it seemed as though he ran into the car. I was driving on the right side of the road, on the east side of the road. He crossed, yes, as

nearly as I can tell, he crossed over to the east side of the road and ran into the path of the car.''

The evidence further shows that the decedent wore thick lenses in his glasses and that his eyesight was poor.

The above testimony of the clerk at the coroner's inquest sets forth the only evidence upon which the plaintiff seeks to substantiate his case. We have in mind the long established rule that the court, in passing upon a motion for a directed verdict, should consider the plaintiff's testimony in its most favorable light. However, there does not seem to be any reasonable grounds for complaint on account of the trial court sustaining the motion for a directed verdict, unless it be upon the ground that the court erred in not submitting the case to the jury on the ''last clear chance'' theory. The plaintiff in his pleadings, and his arguments to this court, uses the term ''last fair chance.'' This term has been used synonymously with the term ''last clear chance.'' Wilson v. Illinois Cent. Ry. Co., 150 Iowa 33, 129 N. W. 340, 34 L. R. A., N. S., 687.

The plaintiff, in his argument to this court, concedes that the decedent was guilty of negligence as a matter of law in that he was walking on his right-hand side of the highway. Plaintiff's only contention in this court is that the theory of defendant's negligence, on the basis of the ''last clear chance'' doctrine, should have been submitted to the jury.

Do the facts in this case justify the submission of this ground of negligence? A definition of the ''last clear chance'' theory has heretofore been announced by this court in the case of Clemens v. Chicago, R. I. & P. Ry. Co., 163 Iowa 499, 502, 144 N. W. 354, 355, where it is stated:

''The doctrine of last clear chance is predicated on the idea (which is humane, and just in its proper application), that the fact that the plaintiff has negligently placed himself in the place of peril will not defeat recovery, if the defendant discovered his negligence, in so placing himself, for such a length of time before the injury that it could have avoided injuring him by exercising reasonable care. * * *.'' See also Hogan v. Nesbit, 216 Iowa 75, 81, 246 N. W. 270, 273.

The burden of proof is upon the plaintiff to establish his right to recovery under the "last clear chance" theory and. to affirmatively show that the defendant failed to exercise reasonable care and that if he had done so he could have avoided injuring the decedent after discovering his perilous position. Hogan v. Nesbit, supra. The plaintiff has failed to meet this burden of proof. The testimony shows that the decedent, as the car was about to pass him, ran over towards the car. The evidence further shows that there was a dent on the left front fender and there was a further dent near the cowl and that the left front door handle had been bent up. The evidence, in no manner, shows that the defendant had knowledge of the claimed impending danger in sufficient time to have stopped his car. The record further shows that at all times the car was on the east side of the road. For comments on a somewhat similar situation where the question of the "last clear chance" theory was raised, see Ryan v. Trenkle, 199 Iowa 636, 643, 200 N. W. 318, 321.

We are of the opinion that the court was fully justified in sustaining the. motion for a directed verdict in favor of the defendant upon the whole record.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.