SCHREIBER MILLS, INC., appellee, v. LEE COUNTY et al.,
appellants.

No. 49353.

(Reported in 88 N.W.2d 811)

MARCH 11, 1958.

Joseph L. Phelan, of Fort Madison, for appellants.

Roy W. Deitchler, of Fort Madison, for appellee.

PETERSON, C. J.—This is an action for property damages resulting from a collision between a Chevrolet automobile owned by plaintiff and driven by Ralph Meer, and a truck loaded with rock owned and driven by defendant Albert B. Vonderhaar. The action was dismissed by the court as to defendant Lee County. The collision occurred on January 15, 1954, at about 10 a. m., three miles southeast of town of West Point, on Highway No. 103. The highway runs northwest and southeast at this point. Vonderhaar was driving southeasterly and Meer northwesterly. The collision was in front of the Eugene Pieper farm, where defendant was turning across the highway into the Pieper driveway. The left front bumper of the truck struck the left rear bumper of Meer's car, causing the car to turn completely over, landing on its wheels about twenty feet from the truck. Plaintiff claims damages to Chevrolet in amount of $1419.41. The jury rendered verdict in favor of plaintiff for $1150.60. Defendant appeals.

Appellant assigns two errors: 1. The trial court should have submitted to the jury an instruction requested by defendant as to doctrine of last clear chance. 2. The court should have admitted certain evidence of a witness Dewey Sprott which was proffered and admission denied.

The only eyewitness testimony in the case was that of Ralph Meer, driver of plaintiff's car, and the defendant. There was one other witness for plaintiff and three other witnesses for defendant, but their testimony was circumstantial. Much of the testimony of Meer and defendant was in direct conflict.

I. Appellee contends appellant did not comply with R. C. P. 196 as to submission of instruction to the jury concerning

doctrine of last clear chance. The record is not clear as to trial court's submission of proposed instructions to counsel in final form, and appellant making objections to same in writing or dictated into the record. However, simultaneously with consideration of instructions by the court and counsel for both parties, defendant seems to have requested instructions Nos. 1 to 9 inclusive. Appellant assigns only as error the failure to submit requested instruction No. 9 pertaining to doctrine of last clear chance. The trial court gave consideration to this submitted instruction at the time of discussion of instructions with counsel, and we will give the question consideration.

In order to analyze the doctrine of last clear chance as same pertains to the case at bar, it is necessary that we make a synopsis of the testimony of Ralph Meer, driver of plaintiff's car, the defendant, and supporting witnesses.

Meer testified he was proceeding northwesterly on Highway No. 103. About three miles north of West Point he drove his car over the crest of a hill. There was mist in the air and the concrete roadway was slightly wet. There was no ice on the roadway. As he was descending the hill, and about four hundred feet distant, he saw the truck of defendant approaching him on the right-hand side of the road. When Meer was about one hundred and fifty feet from the truck, defendant suddenly turned across the road to enter a driveway at the Eugene Pieper farm. Defendant gave no signal, by hand or otherwise, prior to turning. Meer testified he was driving between fifty and fifty-five miles per hour. In trying to avoid striking defendant's truck broadside he turned to the right and out on the shoulder adjoining the pavement. The shoulder was level for a distance of eight or ten feet. He almost succeeded in driving around defendant's truck, but as he testified: "His [defendant's] left front bumper hit my left rear bumper." The impact resulted in plaintiff's car being completely turned over and landing on its wheels about twenty feet from the truck. At the instant of contact he threw himself down in the front seat and succeeded in avoiding personal injuries. After both cars came to rest the front part of defendant's truck was over in the Pieper driveway, and the back wheels "were right at the edge of the highway" or were just on the highway." He testified as to following

conversation between the two parties immediately after the collision: "Q. [To Meer] Will you state what was stated by Mr. Vonderhaar? A. He stated that he didn't see me coming, didn't know where I came from and that he had gone—was hauling rock for a road and he had gone by the road that he was supposed to turn off on, and he was turning around in this farmyard to go back to this road and he said that he didn't see me at all."

Defendant testified he was driving southeasterly on Highway No. 103 and had missed his road and wanted to turn around in the Pieper driveway. As he approached the driveway he slowed down to let another car pass and just as he made the turn he noticed plaintiff's car and stopped about two or three feet over the center line. He watched the car and it seemed to swerve. It slipped around on the road and clicked defendant's front bumper. He did not give a signal because as he started into the driveway he could see no one coming from the front or the rear. Then he saw Meer several hundred feet away; quoting from his testimony:

"He was coming very fast; I would say maybe seventy miles an hour or a little faster. I stopped because I was afraid if I would keep going he would hit me broadside. There was plenty of room for him to go around me on the north. There was also plenty of room for him to go around me on the south. * * * Just before the impact the back of the car swung around as he tried to get over and it looked like he threw himself in the front of the seat. His left rear bumper clicked the left front bumper of my truck. * * * I don't remember whether I told Meer I didn't see him or not. I couldn't say. I didn't know. * * * I don't remember if I gave a signal or not, I might have not. There was no one coming, there was no reason to—that I seen at the time, anyway."

The only other witness for plaintiff was Mr. Marion Mosley, deputy sheriff. He arrived at the scene sometime after the accident and took some photographs which are shown in the record, and made measurement as to skid marks. He testified there was mist in the air, but there was no ice on the pavement. Meer's skid marks extended from about one hundred fifty feet southeast of the Pieper driveway to the point of contact between

the two vehicles. He also stated: "I observed some debris on the right-hand side of the pavement opposite the driveway into the Pieper farm at the point of impact."

Defendant tendered testimony by four witnesses. Henry Metzger drove the car which passed defendant's truck at about the time he started to turn. He was several hundred feet ahead of Meer. He gave no direct testimony as to the collision. Mr. and Mrs. Pieper were in the house, heard the noise of the collision, and came out. They could only describe the location of the truck and the car as to their driveway and the fact that there was mist in the air, but no ice on the pavement. The only other witness was Dewey Sprott, concerning whose testimony appellant assigns error. We will consider the assignment in the next division.

Appellant contends that on the basis of the above outlined situation the trial court should have instructed the jury on the doctrine of last clear chance as against plaintiff, and favorable to defendant. This question has not heretofore been before this court. We have considered the doctrine in many cases, but it has always been on the basis of the matter of last clear chance as being against defendant and favorable to plaintiff. McCormick v. Ottumwa Ry. & L. Co., 146 Iowa 119, 124 N.W. 889; Wilson v. Illinois Central R. Co., 150 Iowa 33, 129 N.W. 340, 34 L. R. A., N. S., 687; Bourrett v. Chicago & N. W. Ry. Co., 152 Iowa 579, 132 N.W. 973, 36 L. R. A., N. S., 957; Carr v. Inter-Urban Ry. Co., 185 Iowa 872, 171 N.W. 167; Miller & Kizer v. Des Moines City Ry. Co., 196 Iowa 1033, 195 N.W. 600; Nagel v. Bretthauer, 230 Iowa 707, 298 N.W. 852; Menke v. Peterschmidt, 246 Iowa 722, 69 N.W.2d 65; Strom v. Des Moines & Central Iowa Ry. Co., 248 Iowa 1052, 82 N.W.2d 781.

 The doctrine of last clear chance involves a theory that if plaintiff is guilty of contributory negligence, but is in peril because of defendant's negligence, or is oblivious to peril, and defendant becomes aware of the peril and can save plaintiff, he is obligated to do so. Under such conditions plaintiff is entitled to this last chance, sometimes called humanitarian chance, in spite of his contributory negligence which would normally defeat his cause of action.

■ The doctrine was clearly and briefly stated in Wine-gardner v. Manny, 237 Iowa 412, 21 N.W.2d 209:

"The doctrine applies where a defendant is aware of plaintiff's perilous position in time to avoid the accident by the exercise of ordinary care but fails to do so. The doctrine refers to negligence after negligence. It is a phase of the doctrine of proximate cause. The theory is that the later negligence becomes the proximate cause."

The doctrine as so stated is supported by the following citations: Groves v. Webster City, 222 Iowa 849, 854–857, 270 N.W. 329; 5 Am. Jur., Automobiles, sections 489, 490, page 778; 4 Blashfield Cyc. Auto. L. and Pr., Perm. Ed., section 2801, pages 385–392; 2 Berry Automobiles, Seventh Ed., section 2.337, page 366; Annotations, 92 A. L. R. 47; 119 A. L. R. 1041.

A comprehensive and detailed definition of last clear chance, together with support for appellee's position, appears in annotation, 32 A. L. R.2d 547, as follows: "Some courts take the view that a defendant may not invoke the last clear chance doctrine. This view is based upon a conception of the doctrine as embracing four elements, the existence of all of which is essential to its application: (1) plaintiff's inability to escape from, or obliviousness to, danger resulting from his own negligence, (2) defendant's awareness of the danger, (3) defendant's opportunity to avert the injury, and (4) defendant's failure to avert it * * *."

In many states the courts have held the doctrine of last clear chance cannot be invoked in favor of defendant as against plaintiff. This is the weight of authority, nation-wide. Rollman v. Morgan, 73 Ariz. 305, 240 P.2d 1196, 32 A. L. R.2d 540; Corey v. Phillips, 126 Conn. 246, 10 A.2d 370; Spear v. United R. Co., 16 Cal. App. 637, 117 P. 956; Wolff v. Stenger, 59 S. D. 231, 239 N.W. 181; Colvin v. Simonson, 170 Wash. 341, 16 P.2d 839. In some states the courts have held to the contrary. Central of Georgia R. Co. v. Motherwell, 224 Ala. 504, 140 So. 547; Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4; Marshall v. Olson, 102 Ore. 502, 202 P. 736; Cantu v. South Texas Transp. Co., Tex. Civ. App., 110 S.W.2d 995.

The line of cleavage seems to be that where the rule of comparative negligence and the rule that defendant must plead contributory negligence as a defense, obtain, the doctrine of last clear chance is effective as to either party. Where plaintiff must plead and prove freedom from contributory negligence, as in Iowa, the doctrine is generally held to be effective only in favor of plaintiff. The reasoning is clear. Assuming that in the case at bar Meer saw defendant turn his truck across the road in sufficient time so that he could have stopped, his failure to do so would constitute contributory negligence. Instruction by the trial court as to obligation of Meer to be free from contributory negligence, and then as to last clear chance in favor of defendant, could, and no doubt would, create confusion as to the law of the case in the minds of the jury. This was the position of the trial court in the instant case, and was his reason for not submitting defendant's requested instruction No. 9, or any instruction on the subject of last clear chance. We agree. Under the facts of this case we do not accept the doctrine of invoking the rule of last clear chance as against plaintiff and in favor of defendant in the case at bar.

Irrespective of the question of the doctrine of last clear chance being invoked in favor of a defendant as against a plaintiff, the facts in this case did not justify the trial court in submitting an instruction on the question to the jury. Appellant contends after Meer saw defendant turning across the road and stop about three feet south of the center line, he could have driven his car either to the north or to the south of the truck without collision. However, Meer testified defendant had driven off the pavement and into the Pieper driveway. He tried to miss the truck on the south, but failed. He would not be obligated to drive to the north because there he would be driving directly into possible oncoming traffic. By its verdict the jury believed Meer's version as to the facts in the case. As we have found in many cases where the doctrine is urged, the facts did not justify the trial court in instructing the jury as to the doctrine of last clear chance. Ryan v. Trenkle, 199 Iowa 636, 643, 200 N.W. 318; Hogan v. Nesbit, 216 Iowa 75, 81, 246 N.W. 270; Nagel v. Bretthauer; Menke v. Peterschmidt; Strom v. Des Moines & Central Iowa Ry. Co., all supra.

II. Appellant's second assignment of error pertains to the ruling of the trial court excluding some of the evidence of the witness, Dewey Sprott. The court excluded the evidence on the basis that the witness was unable to identify a car which had passed him at fast speed, with the car of plaintiff involved in this accident. As to testimony proffered by statement of the attorney for appellant, the court held that most of the testimony was not admissible and also that the attorney refused to state he could offer proof as to all matters contained in his proffer of evidence.

As to the first position of the court the evidence of the witness was as follows: "Q. Do you recall an accident which happened, Mr. Sprott, between a truck driven by Mr. Vonderhaar, the defendant, and an automobile belonging to the Schreiber Mills? A. Well, I wouldn't know whether there was any accident or not. * * * The COURT: Just a minute. Read the question. (Reporter reads same question) A. No, sir."

After a few more questions by appellant's attorney and objections to same which were sustained by the court on the theory that the witness had not connected what he saw with plaintiff's car or the accident, attorney for appellant in the absence of the jury made following proffer:

"Defendant offers to prove by this witness, Dewey Sprott, and said witness would testify if so permitted by this Court, that on the morning of January 15, 1954, at about 10 minutes to 10 he was driving his automobile with Mrs. Sprott as a passenger towards West Point on Highway 103, going up what is known as West Point Hill; that at that time and place the highway was spotted with ice and slippery and as he got to the top of the West Point Hill a 1953 Chevrolet bearing a license plate foreign to Lee County passed him at which time he remarked to Mrs. Sprott that that man was certainly in a hurry to be driving that way under the circumstances; that as he got to the Eugene Pieper farm about 10 o'clock, at the scene of an accident depicted in defendant's Exhibit No. 2, he noticed that same car in a wrecked condition on the north side of the pavement in the Pieper yard. He made the remark to Mr. Vonderhaar later that at the time the driver of the plaintiff's car,

Mr. Meer, passed him that he was driving too fast for the conditions then existing when he passed him."

The following colloquy then occurred between the court and appellant's attorney: "The COURT: You don't know whether you can prove everything that is in there? (Defendant's attorney): No. * * * the defendant's attorney does not know exactly whether the witness would testify to everything that he has stated in the offer of proof and he has no way of knowing without being able to ask the witness the questions. The COURT: You have talked to the witness, haven't you? (Defendant's attorney): Yes. * * * The COURT: You are making an offer of proof and the only thing the Court wants to know is if that witness will testify as to what you have said. (Defendant's attorney): He will testify, as far as I know he will testify. The COURT: Will he or won't he? (Defendant's attorney): I don't know. I don't want him to get on the witness stand and I ask him a question and he say no and he be a liar. * * * The COURT: I want your word, your professional word, that you can prove what you are offering to prove. Can you or can't you? (Defendant's attorney): I don't know. The COURT: If you don't know, the offer is overruled. * * * The COURT: The record shows—In other words, I understand you don't know whether you can prove what you have offered to prove, is that true? (Defendant's attorney): I am not going to say I can and get in there and can't. The COURT: The offer is denied if you can't state to the Court whether you can prove it."

In making a proffer of evidence it is essential that the evidence be material as to issues in the case and that the witness will testify in accordance with the proffer. Busch, Law and Tactics in Jury Trials, section 490; Goldstein, Trial Technique, section 427, where it is stated: "The offer must contain specific evidence, competent upon the subject, which tends to prove the desired fact. Nothing that is offered should be left to inference." See Newell v. Baird, Iowa, N. O. R., 192 N.W. 817; Lessig v. Davis, 72 Ind. App. 111, 125 N.E. 579; Cook v. Farnum, 258 Mass. 145, 154 N.E. 577.

Much of the evidence proffered by defendant's attorney

was not admissible. More important, he refused to say the witness would testify in accordance with the proffer. The ruling of the trial court was correct and is approved.

The case is affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.