CARL E. LUSE, appellee, v. WACO COMMUNITY SCHOOL DISTRICT OF HENRY COUNTY et al., appellants.

No. 51934.

(Reported in 141 N.W.2d 607)

1088

APRIL 5, 1966.

Alanson K. Elgar and Eugene C. McCoid, both of Mount Pleasant, and Dailey, Dailey & Peterson, of Burlington, for appellants.

Morrison, Morrison & Morrison, of Washington, for appellee.

STUART, J.—Plaintiff brought this action to recover the salary alleged due him under a contract whereby he was employed as superintendent of schools of defendant district. Defendants are the school district and its directors who claim the contract

1090

was terminated by mutual agreement when the board accepted plaintiff's oral resignation. The trial court found defendants failed to prove the oral resignation and awarded plaintiff judgment in the amount of $11,600. This is a law action and no authorities are needed to support the proposition that the findings of fact made by the trial court are binding on us if supported by substantial evidence. Rule 344(f)1, Rules of Civil Procedure. We do not weigh the evidence.

Plaintiff was employed as school superintendent for defendant district from July 1, 1962, to June 30, 1963. Plaintiff claims the contract was extended to June 30, 1964, on April 12, 1963. On May 20, 1963, the Board of the Waco Community School District met at a special meeting to canvass the returns of an election held to fill a vacancy on the board. A tie vote was resolved by lot in accordance with the Iowa Code sections 50.44 and 277.21. The board then selected a new president, vice-president and secretary.

Plaintiff testified: "Chairman asked for business to come before the board and Mr. Hult presented as new business remarks that Dr. Herrmann had not been a legal member of the board of education since some time in March, 1962; he thought the board should get legal counsel to declare some of Dr. Herrmann's activities void and specifically named three contracts—that of the Blackhawk Conference selected by the board; the high school principal's contract, Mr. John Alderson, and the superintendent's contract, Mr. Carl Luse. The board did not take any action with regard to the statement by Mr. Hult because I think that about this time Dr. Herrmann submitted a new resignation which he had prepared prior to the meeting of the board. The board did not take any action on Dr. Herrmann's resignation at that time. As to what next transpired I am not sure whether anything else was said before I spoke up or not. I know I told them that I had served too many masters in the past year; everyone knew to what I was alluding; this was making the ninth board member in less than one year of legal reorganization. I could not speak for Mr. Alderson but if they wanted my contract they could surely get it. As to other statements which I made to the board at that time, there were other

questions asked and conversation carried on; as a result of which I told them that I would word a statement that night and present it to the president of the board the following day. * * * As to other statements, to the board the night of May 20th, I was questioned by Mr. Hult and those questions I tried to answer. He asked first when they could get my contract. I told them 'whenever they wanted it'. He then asked me 'is that a resignation?' I said 'is that what you would like, sir?' and he asked if 'I would submit a resignation?' and I told them that I would word one after I went home that night and I would give it to the president the next day. That is the only promise I made to the board that night. I left the meeting shortly after that. Although there was conversation carried on as I was leaving the board room, I believe by all members present with the possible exclusion of the past president. The last statement I heard, concerning the promised piece of paper was made by James Troutman who said, 'I hope he does not make it effective prior to June 30th.' "

Plaintiff's exhibit 3, his resignation, was worded the same night, dated May 21, *1963*, and was to be effective June 30, *1964*, the date of the termination of his extended contract. It was delivered to a member of the board on or about May 28. Between May 20, 1963, and June 12, 1963, plaintiff performed at least some of the duties of the superintendent. On June 7, 1963, a temporary superintendent was appointed and the secretary was authorized to have notice served on Mr. Luse to return school property in his possession. He received such notice on June 11, 1963. He returned the property "under protest that I am still under legal contract as superintendent of the Waco Community School District."

A new superintendent was hired July 15, 1963, on a contract to run from July 1, 1963, to June 30, 1964.

Plaintiff brought suit and recovered the full amount due him on the 1962-63 contract and the extension through June 30, 1964.

I. Defendants claim there is insufficient evidence to support the trial court's finding that plaintiff did not orally resign at the special meeting of May 20, 1963. We do not agree.

Such a contract can be terminated by mutual agreement. 1962 Code of Iowa, section 279.13; Ashby v. School Township of Liberty (1959), 250 Iowa 1201, 98 N.W.2d 848. The question is whether an agreement was reached at that time as to when plaintiff's resignation was to be effective.

All witnesses agree a written resignation was to be submitted. If it was only to embody the terms of an oral resignation already agreed upon, this fact would not prevent the oral agreement from being binding. 17 Am. Jur.2d 363, Contracts, section 28; Annotation, 165 A. L. R. 756, 759. See Marti v. Ludeking, 193 Iowa 500, 185 N.W. 476. However, there is evidence which supports the court's finding that no mutual agreement was reached at that special meeting. Plaintiff's testimony as to the proceedings is substantially supported by Dr. E. P. Herrmann and Mr. Wm. Davison, two board members who resigned the same evening. Mr. Davison heard the statement attributed to Mr. James Troutman, the secretary, that he hoped "he does not make it effective prior to June 30". Although this is denied by many witnesses, a fact issue was created.

The trial court's finding that there was no agreement plaintiff's resignation was to be effective immediately is supported by the board's minutes. The minutes for the special meeting on May 20, 1963, state the resignations of Doctor Herrmann and Mr. Davison were "effective immediately". The minutes referring to plaintiff's resignation state: "Supt. Carl Luse expressed his oral resignation with a written statement to be submitted the following day. Motion by King, seconded by Hult to accept the resignation. Carried."

The minutes of May 21 state: "Motion by Hult, seconded by King to appoint A. K. Elgar as WACO Community school attorney. Mr. Elgar was to be instructed to contact Supt. Luse immediately about his resignation which was to be submitted on May 21, 1963."

The minutes of May 23 state: "Mr. A. K. Elgar, as WACO school attorney, met with the board at this special meeting, called for the purpose of conferring with Mr. Luse as to the completion of his resignation."

These minutes indicate even the board did not consider the oral resignation to be a completed resignation.

Plaintiff testified he was at the school office every working day until he received the notice to turn over all supplies and equipment belonging to the school district and tried to perform the duties of superintendent. It is undisputed that he did perform the superintendent's duties relating to graduation.

We therefore hold, there was substantial evidence to support the trial court's finding plaintiff did not resign by mutual agreement. There is evidence to support a finding the written statement was necessary and that there was no agreement on the effective date of the resignation.

II. Errors II and III relate to the requirements of pleading and proving mitigation. Defendants claim the court erred in holding they must affirmatively allege mitigation and in finding they did not carry the burden of proving this defense.

■ Section 619.8, Iowa Code 1962, states: "No mitigating circumstances shall be proved unless pleaded, except such as are shown by or grow out of the testimony introduced by the adverse party." We have said such statute is "a special defense which defendant must plead and prove or he is limited to circumstances growing out of plaintiff's testimony." Lannom Mfg. Co. v. Strauss Co., 235 Iowa 97, 106, 15 N.W.2d 899, 903; Shewry v. Heuer, 255 Iowa 147, 154, 121 N.W.2d 529, 533.

■ Here the defense was not pleaded, but no attempt was made to introduce any testimony other than plaintiff's and this testimony is within the statutory exception. However, we agree with the trial court this evidence does not show a failure to mitigate. Plaintiff had interviews relating to two different superintendent's positions. According to his testimony he asked for a release so that he might seek other employment. This was never tendered except in connection with a release and settlement of all claims against the school district. The statute prohibited him from entering into another valid contract until a release had been obtained. Section 279.13. Failure to release him without a full settlement effectively prevented him from taking another job had it been offered. Defendants were familiar with the statutory requirement. Plaintiff's replacement was required to get a

release from the board of the school at which he had previously been employed. There is no evidence he was offered any other job or refused any offers. The only evidence which might be considered a failure to mitigate was the fact that he did not contact the state department of public instruction about a position. There was no showing this would have made any difference. We agree with the trial court this is not enough to prove failure to mitigate.

III. Defendants claim the court erred in not permitting witnesses to testify orally concerning statements and actions of the school board on the ground it was not the best evidence. Several instances are referred to and authority is cited for the proposition that actions of the board may be shown by evidence outside the official minutes. School District of Soldier Township v. Moeller, 247 Iowa 239, 243, 73 N.W.2d 43. We need not pass upon this question as defendant made no offer as to what action they expected to prove orally. In Kuiken v. Garrett, 243 Iowa 785, 803, 51 N.W.2d 149, 160, 41 A. L. R.2d 1397, we say:

"Complaint is made in defendants' assignment of error V that the court erred in sustaining objections to certain questions asked by their counsel. It is a sufficient answer to say that there is no showing as to what the answers would have been, had the ruling been otherwise. This court cannot, upon appeal, presume that answers would have been favorable to the aggrieved party. Litigants who feel that part of their case has been erroneously excluded must assume the burden of making an affirmative showing. This has been many times decided. See In re Estate of Heller, 233 Iowa 1356, 1362, 11 N.W.2d 586, and many cases cited therein."

See also Gittings v. Duncan, 164 Iowa 373, 376, 145 N.W. 872; Johnson v. Johnson, 245 Iowa 1216, 1221, 65 N.W.2d 157; Schreiber Mills, Inc. v. Lee County, 249 Iowa 746, 754, 88 N.W. 2d 811, 816.

IV. Defendants claim the trial court erred in finding appellee was not estopped from asserting his rights. They claim to have relied on his oral statements at the meeting on May 20 and his subsequent conduct when they ordered an immediate

audit, hired a temporary superintendent, and hired a permanent superintendent.

 The burden of proof is on the party alleging and relying on estoppel. In re Estate of MacVicar, 251 Iowa 1139, 104 N.W.2d 594, 598. The trial court found as a matter of fact that defendants had failed to sustain this burden. There is substantial evidence to support this finding. One must knowingly take a position or make statements with the intention that they be relied upon by another. In re Estate of MacVicar, supra. Under Division I we held there was evidence to support a finding that plaintiff did not orally resign at the meeting on May 20. This evidence would also support a finding that he did not knowingly take a position or make statements with intent that defendants rely on them. There is a dispute in the record as to his actions after the May 20 meeting. He claims he did the work of superintendent. Defendants claim his acts show an intention to resign. This is also a factual issue.

Defendants could not have relied on plaintiff's statements and actions when they hired either the temporary or permanent superintendent. On May 28 they received the written resignation effective June 30, 1964. The temporary superintendent was not hired until June 7. On June 12 they were notified he was still claiming to be "under legal contract as superintendent". The new superintendent was not hired until July 15, 1963. These were the only two matters pleaded in the amendment alleging estoppel. They now also refer to the "immediate audit" which was conducted sometime after May 20. We do not consider this sufficient proof of a change in position to their detriment to support a plea of estoppel.

V. Defendants claim the trial court erred in finding plaintiff could not enter into a valid contract with another school district until defendants tendered him a written release. We do not think it is clear the trial court's opinion required a written release. Assuming, however, the trial court did require a written release and that it was error to do so, we do not believe such error would have been prejudicial here. The failure to furnish a written release is important here only insofar as its absence might have prevented plaintiff from accepting another job and

thereby mitigating his damages. As stated in Division II there was no evidence he would have been offered a job if he could have obtained a written release. He did not testify he was prevented from getting a job because he had no such release. There is evidence defendants were not willing to give a written release until a complete settlement was reached. Since there was no proof of failure to mitigate in the first place, the admission of improper evidence of plaintiff's reasons for failure to mitigate would not have been prejudicial.

VI. Defendants claim there is not sufficient evidence to support the trial court's finding that the original contract of employment between plaintiff and the school district was properly continued to June 30, 1964. They claim the written modification was not properly signed and filed and that plaintiff's copy was improperly admitted into evidence.

Section 279.13 requires that the contract shall be "* * * signed by the president and teacher, and shall be filed with the secretary before the teacher enters upon performance of the contract * * *." Evidence shows the board approved a motion to modify plaintiff's contract by increasing the salary $500 on February 12, 1963. Plaintiff testified he and Doctor Herrmann signed two copies prior to the April 15 deadline. This is supported by Doctor Herrmann. One copy, plaintiff's exhibit 2, remained in his possession. The other copy, defendants' exhibit 1, was placed in the file with the teachers' contracts on April 13. The board secretary testified defendants' exhibit 1 had been in his possession since he took office.

Plaintiff's exhibit 2 and defendants' exhibit 1 are identical except that plaintiff's copy is dated "April 12, 1963" and defendants' copy is not dated. In the sentence: "I (do—do not) accept the terms of this agreement. Carl E. Luse Teacher" the "do not" was stricken in plaintiff's copy and neither was stricken in defendants' copy.

Mr. Luse's testimony is sufficient to establish the two copies as duplicate originals. It is so stated in the pretrial order.

■■■ "Where an original instrument or writing is made or executed in duplicate * * * each duplicate * * * is primary evidence and is admissible; each of the parts is the writing which

is to be proved, because, by the act of the parties, each is made as much the legal act as the other * * *. As a general rule, either duplicate is admissible, and the mere fact that one duplicate was delivered to the adverse party does not change the other duplicate into secondary evidence; but where a copy contains matter not found on the other copy * * * such copy is admissible." 32A C. J. S., 160, 161, Evidence, section 821.

Because of the variance between the copies, both were admissible and both were considered by the trial court. The parties by their actions treated the contract as having been properly extended. There was substantial evidence to support the court's finding the contract had been continued.

VII. Defendants claim the trial court erred in admitting into evidence and considering exhibit P-6, which is a check offered to plaintiff in payment of his salary up to May 20. On the reverse side was a restrictive endorsement, which, if accepted, would have constituted a complete settlement. Defendants objected to its admission into evidence on the ground that it was "incompetent, irrelevant, and immaterial with payment having nothing to do with the resignation". On appeal they claim it should have been excluded as an offer of compromise and settlement.

The objection in the trial court was directed toward the relevancy or materiality of exhibit P-6. Here, it is claimed the evidence is incompetent because it is an offer of settlement. We have held that an objection must be sufficiently specific in calling the court's attention to why the proposed evidence is inadmissible. "This is particularly true when reliance is placed by the objector upon incompetency. If evidence is irrelevant or immaterial, it may often be that no more specific reason can be given; but it may be thought to be incompetent on many different grounds." Ferris v. Riley, 251 Iowa 400, 410, 101 N.W.2d 176; Evers v. Flindt, 193 Iowa 557, 560, 187 N.W. 484, 485; Wickman v. Illinois Central R. Co., 253 Iowa 912, 921, 114 N.W. 2d 627. The objection here did not call the court's attention to the reason urged on appeal for its incompetency and was therefore not sufficiently specific.

Minutes of a meeting of the school board, introduced

by defendants as part of exhibit D-2, contain a motion to pay Carl Luse the amount shown on exhibit P-6 upon completion of a restricted endorsement. The restrictive endorsement which appears in the back of P-6 is then set out in full in the minutes. Also, there was admitted into evidence without objection exhibit P-7, which is a written form of release submitted to plaintiff, but not signed. No complaint has ever been made about these matters. Even if the objection had been good, we are unable to see where any prejudice could have resulted to defendants from the consideration of exhibit P-6, when the trial court had before it the same offer in the board minutes and similar evidence in the release.

We cannot say the court committed reversible error in considering and commenting on exhibit P-6 under the record in this case.

VIII. Defendants set out twenty-four instances in which they claim the trial court made erroneous findings of fact. We have reviewed the record and find there are some inaccuracies in the court's findings. However, they are either on immaterial matters or of such minor deviation from the record that they would not support a reversal. Such inaccuracies are likely to occur in any trial in which the court makes detailed findings based on his own notes rather than a transcript. The important findings which are challenged are supported by the record or are inferences which may properly be drawn therefrom.

The main thrust of defendants' argument in this division is that the trial court "disregarded the great weight of the testimony which conclusively established that the appellee resigned" and "seemed to adopt all of the statements of the appellee as being the only correct version of what happened at the May 20, 1963, meeting", and discarded as of no substance or weight "the testimony of four members of the board, and of its secretary, together with the testimony of twenty citizens".

Even if we accept defendants' position, we cannot reverse. We do not weigh the evidence. We have exercised our function when we determine if there is substantial evidence to support the trial court's findings. Whether we would have reached the same result had we been sitting as the trier of fact

is of no significance. Mineke v. Fox, 256 Iowa 256, 126 N.W.2d 918, 919.

IX. Defendants claim the trial court erred in not granting them a continuance. The motion for continuance is verified and supported by affidavit. No written resistance or counter-affidavits were filed. The petition was filed October 21, 1963. Special appearances on the part of defendants and various motions by both parties kept the case active in the pleading stage. None of the preliminary matters appears to have been frivolous or for the purpose of delay. On March 30, 1964, the case was assigned for trial April 7, 1964. The pleadings were not resolved until April 1, 1964, when the court ruled on defendants' motion to strike portions of the reply. On April 3 Eugene C. McCoid, co-counsel, withdrew his appearance and the firm of Dailey, Dailey & Peterson appeared along with Mr. Elgar. Motion for continuance was filed the same date. Hearing on the motion was held April 4, and the court's ruling was filed April 6, in which the motion was sustained and the trial date changed to April 13, a six-day delay. Defendants took no exception to the ruling and did not request further continuance. In view of our subsequent holding, we need not determine the right of defendants to present on appeal an objection to a ruling which on its face was favorable to them without making further record. We will assume the defendants' exception to the limited continuance is properly before us.

Defendants' motion for continuance was grounded upon: (1) Withdrawal of co-counsel without advance notice (2) the time within which defendants could have requested a jury trial would not have expired on April 7 and (3) defendants were effectively deprived of their right to conduct discovery proceedings in accordance with the Rules of Civil Procedure and to request a pretrial conference.

"A motion for continuance addresses itself to the sound legal discretion of the trial court, and his ruling will not be interfered with on appeal unless the discretion has been abused and an injustice done the party denied the continuance. This discretion * * * is a judicial discretion to be governed and controlled by legal rules and must be exercised, not capriciously

or oppressively, but for the prevention of injustice and oppression." In re Estate of Rogers, 226 Iowa 183, 185, 283 N.W. 906.

See also Kemp v. Day & Zimmerman, Inc., 239 Iowa 829, 854, 33 N.W.2d 569; In re Estate of Croulek, 252 Iowa 700, 706, 107 N.W.2d 77.

 It was not an abuse of discretion for the trial court to refuse to grant a longer continuance because of the withdrawal of counsel. Mr. Elgar who had represented defendants when the controversy first arose was still counsel of record. He must have been thoroughly familiar with all proceedings to date. Mr. Mc-Coid was employed to assist in the lawsuit. Under these circumstances it was clearly within the trial court's discretion to deny or limit the continuance to such period as he deemed adequate.

There was no abuse of discretion in setting the trial date before the time for filing a jury demand had expired. The reassignment until April 13 gave defendants all the time they were entitled to in which to file a jury demand. No such demand was filed. We do not believe there is any merit in the argument they were deprived of the right to jury trial by a premature assignment. Had a demand for a jury been filed and denied by the court because of the previous assignment, a different case would be presented. There is no showing that defendants actually wanted a jury trial or that they would not have been given a jury trial if one was demanded.

Defendants claim the assignment for trial so soon after the issues were drawn up deprived them of the right to conduct necessary and proper discovery proceedings. They stated they desired to take plaintiff's deposition and those of Doctor Herrmann and Mr. Davison, both of whom appeared as plaintiff's witnesses. They expected thereby to learn the names of other persons whose depositions might be desired and facts about the alleged failure of defendants to release plaintiff to accept other positions.

In view of the expeditious manner in which this case was handled after the petition was filed, it would appear that the trial court was not overly generous in continuing the trial for only six days. As no resistance was filed and as the trial court did not state his reasons for the six-day continuance, we have

no way of knowing why the continuance was so limited. We would have been inclined to grant a longer continuance, but we are not prepared to say the failure to do so here amounts to an abuse of discretion.

Defendants had nine days (including one weekend) after the hearing on the motion for continuance to prepare for trial. A pretrial conference was held on April 8 which should have disclosed the need for further pretrial discovery proceedings, if any. There was no further request for additional time. Plaintiff was available for deposition April 3 and 4, but it was not taken. Apparently the trial court believed the additional time granted was sufficient to enable defendants to prepare for trial. The short postponement did not amount to an abuse of discretion.

We find no prejudicial errors justifying a reversal of the trial court.—Affirmed.

All JUSTICES concur.