**Martha SAUER and Kathy Dobbs, Plaintiffs-Appellants/Cross-Appellees,**

**v.**

**Maurice L. MOFFITT, Helen K. Moffitt, Lawrence Moffitt, Gary Moffitt and Moffitt Corporation, Defendants-Appellees/Cross-Appellants.**

No. 83–834.

Court of Appeals of Iowa.

Nov. 20, 1984.

As Amended Nov. 26, 1984.

John R. Mackaman and Arthur F. Owens of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for plaintiffs-appellants/cross-appellees.

Larry L. Seckington, Clifford S. Swartz, and Michael J. Schroeder of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for defendants-appellees/cross-appellants.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ.

SNELL, Judge.

Plaintiffs, Martha Sauer (Martha) and Kathy Dobbs (Kathy), appeal from the trial court decree and the supplemental decree following a hearing on the Master's report. The defendants are Maurice Moffitt (Maurice), Helen Moffitt (Helen), Lawrence Moffitt (Larry), and Gary Moffitt (Gary). Defendants Maurice and Helen are the parents of defendants Gary and Larry and plaintiffs Martha and Kathy.

Prior to 1964, Maurice purchased the Main Farm (Farm No. 1) and the South Farm (Farm No. 2). In 1964, Maurice purchased the Interstate Farm (Farm No. 3) and made a gift of it to Martha and Kathy. Maurice and Helen filed a federal gift tax return reflecting the gift of Farm No. 3.

The Moffitt Corporation was formed in 1967. Maurice, Helen, and Larry were elected officers. Maurice claims that Moffitt Corporation was established for estate planning purposes. He transferred Farm No. 1 and Farm No. 2 to the corporation. Martha and Kathy executed a deed conveying Farm No. 3 to the corporation. They claim that Maurice induced them to make this transfer by promising that he would put all his assets in Moffitt Corporation and that the stock of the corporation would be divided equally among the four children upon Maurice's retirement. Maurice and Helen deny that their promise went that far.

Moffitt Corporation never acquired any additional land. Maurice testified that the corporate philosophy was to hold and improve the farms, and to refrain from incurring' debts against the property. The corporation leased the farmland to Maurice on a fifty-fifty crop share basis. This lease remains in effect. The corporation has never had any employees nor has it paid any compensation to the officers or directors.

From 1968 through 1976, the plaintiffs were non-active shareholders. They did not receive written notice of the annual meetings nor did they attend such meetings. Both plaintiffs lived in Oklahoma during this period and both returned to Iowa in 1971. They each lived in one of the smaller houses on the farms when they first returned, but later moved off the farm.

The conflict between the plaintiffs and defendants began after the plaintiffs returned to Iowa. It appears that both plaintiffs were in need of money and began to question the actions of the board and the non-payment of dividends. The record indicates that during the period preceding the commencement of this action the defendants were reluctant to advise the plaintiffs of the corporation's business and that there were a couple of attempts to buy out the plaintiffs' shares.

In October 1978, the plaintiffs filed this action seeking recovery in their individual capacity for the illegal, or fraudulent acts of the defendants under Iowa Code section 496A.94(1)(c); actual and punitive damages in their individual capacity for the defendants' acts of conspiracy; actual damages in their individual capacity for breach of fiduciary duty; actual damages in their individual. capacity for breach of an oral contract; and recovery in a derivative action on behalf of Moffitt Corporation under Iowa Code section 496A.

The trial court ruled that there was a breach of an oral contract and ordered Maurice and Helen to make gifts to the plaintiffs to put them in the position they would have been in had the contract been performed. The court also found that there was a breach of fiduciary duty but that the acts which involved that claim were subject to the derivative action and not to the individual claims. The court fashioned an order of equitable relief requiring a partial liquidation of the corporation and a buy-out of the plaintiffs' shares. The court also found that the defendants had acted fraudulently and awarded exemplary damages to the individual defendants rather than the corporation.

On appeal the plaintiffs assert: (1) the trial court order requiring a transfer to them of shares equal to the number held by their brothers was inadequate; (2) the trial court erred in not finding that Maurice and Larry usurped corporate opportunities by personally acquiring three farms in the area of the Moffitt Corporation land; and (3) the relief granted was inadequate.

Because this case was tried in equity, our review is de novo. Iowa R.App.P. 4. Although this court is not bound by the trial court's determination of credibility, such findings are to be given weight. Iowa R.App.P. 14(f)(7).

**I. Stock Holding.** The plaintiffs claim that the trial court order requiring the transfer of shares equal to the number held by their brothers was inadequate. They argue that they are entitled to one-half of all the outstanding shares in the corporation.

The stock ownership at the time of incorporation in 1968, the stock ownership at the time of the trial in 1980, and the stock ownership as adjusted to reflect the relief ordered by the trial court is set forth below:

|  | 1968 | 1980 | As Adjusted |
|---|---|---|---|
| Maurice | 783 | 433 | 367 |
| Helen | 783 | 433 | 367 |
| Lawrence | 237 | 445 | 445 |
| Gary | 237 | 445 | 445 |
| Martha | 230 | 372 | 438 |
| Kathy | 230 | 372 | 438 |

Kathy and Martha transferred Farm No. 3 to the corporation in consideration for their stock. The boys did not transfer any property to the corporation, but rather re-

ceived the stock gratuitously from their parents. Kathy and Martha claim that the transfer of Farm No. 3 to the corporation was made with the understanding that all of the stock would be distributed equally among the four children. At the time of incorporation, the two boys received fourteen shares more than the two girls. When Kathy and Martha questioned this, they were told that because Larry and Gary would be farming the land, the additional stock was necessary to allow them to manage the farm operations without checking with the plaintiffs first. Kathy and Martha claim, however, that their parents assured them that future stock distributions would be made equally.

The girls claim that these promises to distribute the stock equally constitute an oral contract and that they are each entitled to one-fourth of the shares of stock of Moffitt Corporation.

■ To determine whether an oral contract is binding, it is necessary to look to the intention of the parties. *Elkader Cooperative Co. v. Matt*, 204 N.W.2d 873, 875 (Iowa 1973).

> It is generally held an oral agreement may be enforceable, even though the parties contemplate that it be reduced to writing and signed, if it is complete as to its terms and has been finally agreed to. Under such circumstances the writing is merely an expression of a contract already made. On the other hand, the parties may intend that obligation should arise *only* upon the signing of a written instrument embodying the terms they have tentatively agreed to. *Alpen v. Chapman*, 179 N.W.2d 585, 588, 589 (Iowa 1970); *Luse v. Waco Community School District*, 258 Iowa 1087, 1092, 141 N.W.2d 607, 610 (1966); Restatement, Contracts, section 26 (1932); 17 Am. Jur.2d, Contracts, sections 28, 29 (1964); 17 C.J.S. Contracts § 49 (1963).

■ After considering the record, we find that there is clear and convincing evidence of an enforceable oral contract.

A meeting was held on December 25, 1968, at which the final terms of the incorporation were discussed. It was at this meeting that the girls questioned why the boys received fourteen more shares of stock. The girls claim that they were assured that all future stock distributions would be equal. While Maurice testified that he did not remember any discussion of future stock distributions, Helen stated that it was her recollection that "the boys and girls would have about equal interest in the Moffitt Corporation."

"The existence of the mutual understanding, the proposal and acceptance, may be implied from conduct and circumstances. These may be shown by circumstantial evidence, or by the admission of the party to be charged." *In re Estate of Newson*, 206 Iowa 514, 518, 219 N.W. 305, 307 (1928). In close cases such as this, we give greater weight to the findings of the trial court. The trial judge had the opportunity to view the witnesses and to assess their credibility. The testimony of the witnesses, combined with the transfer of Farm No. 3 to the corporation by the girls in consideration for their shares, indicates that the parents intended to make an enforceable promise to distribute the shares of stock equally among the four children.

We reject the plaintiffs' claim that they are entitled to a total of one-half of the outstanding stock of the Moffitt Corporation. Under the agreement, Maurice and Helen agreed to distribute all of their stock upon Maurice's retirement. Although Maurice indicated that he is not as active as he once was, there is no showing that he has retired completely from farming. We affirm the trial court order requiring Maurice and Helen to make transfers of stock to the plaintiffs in such amounts that after the gifts all four children will have equal holdings less the seven shares given to the two boys in December, 1968.

■ **II. Corporate Opportunity.** Over the course of the corporation's existence, Maurice Moffitt personally acquired three farms. He purchased the Baker farm in 1969 and later conveyed one-half interest to Larry. In 1970, Maurice purchased the

DeGraff farm and in 1971, Maurice and Larry together purchased the Keipp farm.

The plaintiffs claim that these purchases constitute corporate opportunities of Moffitt Corporation and that Maurice and Larry breached their duty of loyalty by acquiring these three farms. They urge us to impose a constructive trust on the three farms in favor of Moffitt Corporation. The leading Iowa case on corporate opportunity and constructive trusts is *Ontjes v. MacNider*, 232 Iowa 562, 5 N.W.2d 860 (1942).

In that case, the supreme court set the following standard for determining whether there is a corporate opportunity:

It is true that when a business opportunity comes to a corporate officer or director in his individual capacity rather than in his official capacity, and the opportunity is one which, because of the nature of the enterprise, is not essential to his corporation, and is one in which it has no interest or expectancy, the officer or director is entitled to treat the opportunity as his own, and the corporation has no interest.

On the other hand, it is equally true that, if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself. And, if, in such circumstances, the interests of the corporation are betrayed, the corporation may elect to claim all of the benefits of the transaction for itself, and the law will impress a trust in favor of the corporation upon the property, interests and profits so acquired.

*Id.* at 578–79, 5 N.W.2d at 869, (*citing Guth v. Loft, Inc.*, 23 Del. Ch. 255, 271–72, 5 A.2d 503, 510–11 (1939) (citations omitted)).

The court also favorably quoted the New Jersey Supreme Court:

It is clear from an analysis of the two opinions in the Loft case, as well as of the numerous authorities cited therein, that a finding of "corporate opportunity" will be denied (a) wherever the fundamental fact of good faith is determined in favor of the director or officer charged with usurping the corporate opportunity, or (b) where the company is unable to avail itself of the opportunity, or (c) where availing itself of the opportunity is not essential to the company's business, or (d) where the accused fiduciary does not exploit the opportunity by the employment of his company's resources, or (e) where by embracing the opportunity personally the director or officer is not brought into direct competition with his company and its business. It will be observed that all of the foregoing elements are stated disjunctively and it would therefore seem that the absence of any one of them is sufficient to defeat such claim of corporate opportunity as is made in this case.

*Ontjes*, 232 Iowa at 579–80, 5 N.W.2d at 869–70 (*citing Solimine v. Hollander*, 128 N.J.Eq. 228, 246–47, 16 A.2d 203, 215 (1940)).

We find that the opportunity was not essential to the business and that the corporation had no expectancy interest in the farms. *See, e.g., Pioneer Oil & Gas Co. v. Anderson*, 168 Miss. 334, 346, 151 So. 161, 164 (1933) (mere fact that a corporation was negotiating for the purchase of certain property did not give it such an interest and expectancy as would under the purchase by the president and secretary a breach of their fiduciary duties); *Camden Land Co. v. Lewis*, 101 Me. 78, 93–94, 95–97, 63 A. 523, 529, 530 (1905) (agent authorized to purchase real estate did not breach fiduciary duty by purchasing farms because neither the corporation nor the directors specifically directed him to purchase the farms for the corporation).

There is no showing that the corporation had any expectancy interest in acquiring

the farms or that the farms were essential to the business. The trial court properly ruled that the farms did not represent a corporate opportunity.

### III. Relief Granted.

■ **A. Actual Damages.** In their original petition, the plaintiffs sought damages in their individual capacity for the defendants' fraudulent acts and as shareholders in the derivative action.

The trial court ruled that it had the power to fashion relief under Iowa Code section 496A.94(1). The relief granted for these two claims was an order for partial liquidation and a requirement that Moffitt Corporation purchase plaintiffs' shares of stock. The court also ordered that Maurice make reparation for improper expenditures which were specified in the trial court findings. On appeal, the plaintiffs assert that the court should have awarded a specific amount of lost profits and a full liquidation.

The record indicates that the corporation was damaged because of the defendants' mismanagement and fraudulent acts. Some of the more glaring actions or inactions were: the failure to maintain proper and accurate books and records; the commingling of Maurice Moffitt's crops with those of the corporation; the diversion of assets of Moffitt Corporation into the defendants' livestock operation; and the failure to provide Martha and Kathy with proper notice of the board of directors meetings.

"Whenever a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation though no similar relief has been granted before." *Holden v. Construction Machinery Co.*, 202 N.W.2d 348, 363–64 (Iowa 1972).

Section 496A.94(1) grants the district court the power to liquidate the assets and business of a corporation in a shareholder suit if: "(c) the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent; or (e) . . . the

corporate assets are being misapplied or wasted." Iowa Code § 496A.94(1) (1983).

In a case defining the powers granted a court under a similar statute, an Oregon court stated:

Depending upon the facts of the case and the nature of the problem involved, various alternative remedies may be appropriate. Among those suggested are the following:

(a) The entry of an order requiring dissolution of the corporation at a specified future date, to become effective only in the event that the stockholders fail to resolve their differences prior to that date;

(b) The appointment of a receiver, not for the purposes of dissolution, but to continue the operation of the corporation for the benefit of all the stockholders, both majority and minority, until differences are resolved or "oppressive" conduct ceases;

(c) The appointment of a "special fiscal agent" to report to the court relating to the continued operation of the corporation, as a protection to its minority stockholders, and the retention of jurisdiction of the case by the court for that purpose;

(d) The retention of jurisdiction of the case by the court for the protection of the minority stockholders without appointment of a receiver or "special fiscal agent";

(e) The ordering of an accounting by the majority in control of the corporation for funds alleged to have been misappropriated;

(f) The issuance of an injunction to prohibit continuing acts of "oppressive" conduct and which may include the reduction of salaries or bonus payments found to be unjustified or excessive;

(g) The ordering of affirmative relief by the required declaration of a dividend or a reduction and distribution of capital;

(h) The ordering of affirmative relief by the entry of an order requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders at a price to be determined

according to a specified formula or at a price determined by the court to be a fair and reasonable price;

(i) The ordering of affirmative relief by the entry of an order permitting minority stockholders to purchase additional stock under conditions specified by the court;

(j) An award of damages to minority stockholders as compensation for any injury suffered by them as the result of "oppressive" conduct by the majority in control of the corporation.

*Baker v. Commercial Body Building, Inc.,* 264 Or. 614, 631–33, 507 P.2d 387, 395–96 (1973).

■ The district court has the power to liquidate a corporation under section 496A.94(1). *Holi-Rest, Inc. v. Treloar,* 217 N.W.2d 517, 527 (1974). We agree with the Oregon court and find that Iowa Code § 496A.94(1) allows the district court to fashion other equitable relief. The defendants are unable to account for property and income diverted from the corporation over the years because of their mismanagement or fraudulent acts. The district court order requiring a partial liquidation and redemption of the plaintiffs' shares provides appropriate equitable relief for both their individual claims of fraud and the derivative claim under 496A.94.

■ **B. Punitive Damages.** The defendants claim that the trial court improperly awarded exemplary damages to the individual plaintiffs. They argue that there was no showing of malice on the part of the defendants. Additionally, they argue that even if exemplary damages were proper, they should have been awarded to the corporation, not to the individual plaintiffs.

[I]n a stockholder's derivative action an equity court may, in its discretion, award exemplary damages upon a showing that some legally protected right has been invaded, such as intentional act of fraud or other wrongful conduct.

... [A]n intentional act of fraud in a court of equity includes all acts, omissions and concealments which involve a breach of either legal or equitable duties, trust or confidence, justly reposed, which are injurious to another or by which an undue or unconscionable advantage is taken.

*Holden v. Construction Machinery Co.,* 202 N.W.2d 348, 359 (Iowa 1972) (citations omitted).

We agree with the trial court finding that the actions of Larry, Maurice, and Helen were not merely negligent, but rather rose to the level of intentional acts of fraud. The record establishes several instances in which the three defendants breached their fiduciary duties. Maurice testified that he would feed his cattle silage made from corn produced by the Moffitt Corporation. He also conceded that he commingled crops grown on his own land with crops raised on the corporation's land. There was also testimony that the plaintiffs were not allowed to see the corporate records.

We find that the punitive damages award to the individual plaintiffs was appropriate.

■ **C. Attorney Fees.** Attorney fees may be awarded to shareholders who successfully prosecute a derivative action on behalf of the corporation. *Holi-Rest, Inc. v. Treloar,* 217 N.W.2d 517, 526 (Iowa 1974). However, attorney fees may not be awarded with respect to individual claims asserted as part of a shareholder's derivative action. *Id.* In determining the amount of attorney fees, the trial court must assess the reasonable value of the services rendered. *Holden v. Construction Machinery Co.,* 202 N.W.2d 348, 365 (1973).

■ The plaintiffs presented the trial court with an itemized list of attorney fees totalling $80,238.90 and expenses totalling $9,037.85. In view of the fact that only one of the five claims in the petition centered on the derivative action and that much time was spent arguing individual claims, we affirm the trial court award of $20,000.00.

**D. Interest.** The appellants also seek interest on the money judgment awarded in the decree. Iowa Code section 535.3 provides that:

> Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year. ...
> The interest shall accrue from the date of the commencement of action.

Iowa Code § 535.3 (1983).

Following the Master's Report, the trial court found the net value of the plaintiffs' stock to be $135,893.06 and ordered payment by the defendants of this amount.

We find that interest should be paid to the plaintiffs on the $135,893.06 awarded to each plaintiff in this decree.

The findings of the trial court are affirmed as modified.

AFFIRMED AS MODIFIED.